Robert Anthony REED, III, et al.,
Plaintiffs-Appellees,

v.

James A. RHODES, et al., Defendants,

Ohio State Board of Education and
Superintendent of Public Instruction
(81–3417), Defendants-Appellants,

Cleveland Board of Education (81–3418),
Defendant-Appellant,

Daniel R. McCarthy, Intervenor-Appellee.

Nos. 81–3417, 81–3418.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1982.

Decided Oct. 20, 1982.

Mark O'Neill (argued), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendants-appellants in No. 81–3417.

William H. Baughman, Jr., Squire, Sanders & Dempsey, Cleveland, Ohio, for defendants-appellants in both cases.

James L. Hardiman, Cleveland, Ohio (argued), Thomas I. Atkins, Teresa Demchak, N.A.A.C.P., New York City, for plaintiffs-appellees.

Leonard Kleinman (argued), Phillip C. Furber, Robert A. Ronallo, McCarthy, Lebit, Crystal, Kleinman & Gibbons, Cleveland, Ohio, for intervenor-appellee.

George I. Meisel, James P. Murphy, John H. Bustamante, Bustamante, Donohoe, Palmisano & Company, L.P.A., Cleveland, Ohio, for defendant-appellant in No. 81–3418.

Before EDWARDS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

The defendants in this school desegregation case appeal from the district court's second interim allowance of fees to a special master. The allowance covers services of the special master from March 1, 1978 to August 30, 1980. After conducting a hearing the district court awarded fees to the master of $511,261.98. In addition the special master was permitted to recover out-of-pocket expenses in the amount of $11,638.01. *Reed v. Rhodes,* 516 F.Supp. 561 (N.D.Ohio 1981). We reverse and remand with directions.

I.

A.

The special master was appointed on September 14, 1976. On August 25, 1978 the

district court entered an order granting an allowance of interim fees to the special master of $445,216.25 plus expenses of $12,858. This award was for services from appointment through February 28, 1978. The amount of the allowance resulted from a calculation of the time claimed by the special master and some associates in his law office at the average rate of $110 per hour. The defendants appealed and this court found the award to the special master excessive. *Reed v. Cleveland Board of Education,* 607 F.2d 737 (6 Cir. 1979).

In vacating the portion of the order which related to the special master's compensation this court specifically rejected the district court's conclusion that the special master should be compensated at the full rates charged by experienced trial attorneys in Cleveland. Instead, we adopted the conclusion of Judge Weinstein in *Hart v. Community School Board of Brooklyn,* 383 F.Supp. 699, 767 (E.D.N.Y.1974), *aff'd,* 512 F.2d 37 (2d Cir. 1975), that "a reasonable fee would be based upon about half that obtainable by private attorneys in commercial matters." 607 F.2d at 745. We then approved an hourly rate of $65 for the special master and $40 for his associates. The rate established for the special master was found to be about one-half the highest Cleveland rate found by the district court and approximately two-thirds the average rate of experienced Cleveland trial lawyers. In reaching our conclusion in the matter this court noted the Supreme Court's treatment of masters' fees in *Newton v. Consolidated Gas Co.,* 259 U.S. 101, 42 S.Ct. 438, 66 L.Ed. 844 (1922). The district court's award of expenses was not disturbed.

### B.

Though this court had written on the subject in this very case and had established the rule for the Sixth Circuit less than two years earlier, in considering the special master's second application for interim fees the district court wrote, "There is a singular

lack of case law respecting appropriate compensation for special masters in public litigation." 516 F.Supp. at 568. The district court found the *Hart* standard which this court had explicitly adopted to be "inapposite" to the second interim fee application. *Id.* at 569.[1] The district court then proceeded to award fees to the special master on the basis of $125–$150 per hour for his professional services and $100–$120 per hour for his "administrative services." The award for work of the special master's associates ranged from $75 to $100 per hour for professional services and from $60 to $80 per hour for administrative services.

The district court based its determination that the formula adopted by this court should not be applied to the pending application on two considerations. First, the court noted that the initial award of fees was for work prior to entry of the remedy order in this case and was largely concerned with formulation of a proper remedy. On the other hand, the current fees were being paid for "post-decretal" work which involved implementation of the remedy. The district court felt that this work deserved a higher rate of compensation because it was more difficult, less controllable by the master and of indefinite duration. As a second consideration the district court noted that this court has applied different formulae in awarding fees to attorneys in civil rights litigation. The court referred specifically to this court's decision in *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (1979). The district court noted that *Northcross* was decided under the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, but reasoned that the underlying purpose of that Act—to assure that "private attorneys general" will be encouraged to seek the vindication of individual civil rights—is a proper consideration in setting the compensation of masters in public litigation. 516 F.Supp. at 570.

1. The district court stated that we followed a "passing remark" by Judge Weinstein. 516 F.Supp. at 568. "Passing remark" or not, this court adopted the *Hart* formula and it became the law of the Sixth Circuit. Actually, Judge Weinstein's opinion is a valuable treatise on special masters and nothing in it was written without careful consideration.

Included in the award of $511,261.98 now under review was $50,284.32 in fees to the special master and his associates "for preservation and collection of fees." This portion of the allowance was for work done in connection with the appeal of the first interim award. It was calculated on essentially the same basis as the remainder of the award with fees of $125 per hour for the special master and $50 to $125 per hour for his associates. There is some variation because different associates became involved in the appeal.

## II.

The district court erred in concluding that the *Hart* formula adopted by this court in reducing the first interim award was "inapposite" to the second request for fees. In the first appeal this court recognized the abilities of the special master and discussed the activities which were the basis of the fee request. We noted the rates charged by experienced Cleveland attorneys as disclosed by the record and concluded that the special master should not be compensated at the same rates. We find nothing in the present record to cause us to reconsider that holding.

### A.

Though the special master's functions may have been different after entry of the remedy order, the record does not demonstrate that they were more difficult. They were less time-consuming, as disclosed by a comparison of the total number of hours claimed in the first period of 17½ months with the number claimed in the present submission which covered 30 months. While some of the problems of implementation may have been more tedious and vexing, no greater level of professional skill was involved in solving them than in fashioning an equitable remedy. In fact, many of the post-decretal activities of the master appear mundane when compared with his earlier work. The only authority cited by the district court for the "pre-decretal/post-decretal" dichotomy is Nathan, *The Use of Masters in Institutional Reform Litigation,*

10 Toledo L.Rev. 419 (1979). Professor Nathan's article discusses the standards for appointment of a special master under F.R. Civ.P. 53 and argues for a relaxed standard after a remedial order has been entered. The article does not discuss compensation of masters or indicate in any way that the work of a post-decretal master is more difficult than that of one appointed prior to entry of a remedial order. The district court, the special master and the plaintiffs have seized upon a distinction without a difference to justify departing from this court's clear holding in the first decision.

### B.

In our opinion in the previous fee appeal we wrote, "We believe that many of the considerations which apply to the setting of attorneys' fees in public litigation apply to setting the fees of a special master." 607 F.2d at 746. The district court paraphrased our observation to read, "rates available to attorneys in public litigation ... should guide courts in awarding fees to Masters in such cases ...." 516 F.Supp. at 569–70. We spoke of considerations, not rates, and immediately followed the observation with an example of a district court in 1972 approving attorneys fees of $20 per hour for out-of-court work and $30 per hour for in-court work in complicated public litigation. 607 F.2d at 746.

In our 1979 opinion we made no reference to the Fee Award Act of 1976. However, it is clear that some of the most important elements to be considered in setting a fee under that Act are not present when a court sets the fee of a special master. 42 U.S.C. § 1988 permits a district court to allow a reasonable attorney's fee to *the prevailing party* as costs in designated civil rights actions. If a civil rights case is lost by the plaintiff there can be no award of attorney's fees. Because the risk of losing is very real, higher fees are justified in a contingent fee case than when an attorney is assured of payment regardless of the outcome. This element of contingency was noted by the court in *Northcross* where we reviewed fees set pursuant to 42 U.S.C. § 1988. We wrote:

Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon success. An attorney's regular hourly billing is based upon an expectation of payment, win, lose or draw. If he or she will only be paid in the event of victory, those rates will be adjusted upward to compensate for the risk the attorney is accepting of not being paid at all.

611 F.2d at 638. A special master runs no risk of non-payment; he is assured a reasonable fee for his services.

In addition to offering attorneys the promise of payment if their clients prevail, the 1976 Act seeks to assure that attorneys will be willing to undertake unpopular causes in seeking to vindicate civil rights. Though the unpopularity of a cause may affect the attitude of some people toward a special master, he does not risk the same obliquy as an attorney who initiates such an action. As an appointee of the court functioning in a quasi-judicial capacity the master does not occupy an adversary position in the litigation. He need not be nearly so visible as the attorneys or the district judge. Any suggestion that the practice of the special master in this case suffered from some stigma related to his position is dispelled by the proof that he was able to bill private clients for approximately 1200 hours of legal work each year while serving as master.

When we wrote that "many" of the considerations applicable to setting attorneys' fees in public litigation also apply to setting compensation for special masters, we did not mean "all" considerations. As we have shown, two of the most compelling considerations in the setting of fees for private attorneys in civil rights litigation are not present in the case of special masters. In our earlier decision we considered factors which do apply to both situations, *e.g.*, foreclosure from other work and the nature of the assignment. The formula which we approved in that decision took into account the considerations which apply equally to setting the two types of fees.

## C.

The district court also erred in awarding fees "for preservation and collection of fees." An examination of the four fee applications which resulted in the second interim award indicates that the special master claimed 20.75 hours and his various associates claimed 368 hours in the aggregate for preservation of the fee. The district court awarded a total fee for work on the appeal of $33,308.75 calculated at the $125 and $50–$125 rates. It also allowed out-of-pocket expenses of $1450 in connection with the appeal and $15,525.57 paid to another Cleveland law firm which represented the special master in this court where the special master was permitted to appear as amicus curiae. Thus the total award in connection with the appeal was $50,284.32.

In the appeal from the first interim award the plaintiffs-appellees filed a brief and presented oral argument in support of the full award made by the district court. Counsel for the special master filed an exhaustive brief in support of the full award and was permitted to present oral argument. The brief was signed and the oral argument was made by a member of the Cleveland firm employed by the special master, not by a member of his own firm. The United States, as amicus curiae, filed a brief in support of a substantial fee award, but suggested a remand to the district court "to take additional evidence and conduct additional analyses on the question of an appropriate fee award."

The special master was entitled to defend the district court's award. However, he was represented by a well-known Cleveland law firm at a fee of $15,525 on the single issue in the appeal which concerned him. We can find no justification for paying the special master or his associates for their work on the appeal in addition to allowing fees paid by the master to his retained counsel. Such a "doubling up" of costs to be paid by a public institution such as a school board is not permitted. The first interim fee award by the district court was

based on the special master's requested rates. When the defendants appealed that award the special master was in the position of a client, not an attorney. He can collect for the attorney's fees and expenses actually incurred, but not for the time he and his associates spent on the appeal.

### III.

The defendants introduced into the record relevant statistics from the Consumer Price Index to show the monthly cost-of-living increases which occurred between 1978 and 1980. An application of the median rate of inflation disclosed by these exhibits to the previously approved hourly rates for the special master and his associates would produce the following fees:

| | |
|---|---|
| Special master | $200,256.95 |
| Associates | 90,242.17 [2] |
| | 290,499.12 [3] |

This is the total compensation which this court approves for the special master for all services from March 1, 1978 to August 30, 1980. The special master is also entitled to recover out-of-pocket expenses of $11,638.01 plus the legal fee of $15,525.57 and other expenses of $1450 incurred in the appeal from the first interim award of fees.

The record indicates that the special master was discharged on February 25, 1981, and it is assumed that a final request for compensation will be filed in the district court. Fees for the special master from August 31, 1980 to February 25, 1981 will be calculated in the same manner as we have approved for the period from March 1, 1978 to August 30, 1980. The special master will be compensated for hours worked at the base rate of $65 per hour adjusted by the median rate of inflation for the period;

[2] An identical breakdown of the fees of the associates appears in the briefs of the plaintiffs-appellees and the defendants-appellants, and is not repeated here.

[3] The rate for the special master adjusted for inflation, is $74 per hour, and the overall rate for him and his associates is $67 per hour. The record discloses that the special master in the Columbus, Ohio school desegregation case was paid at the rate of $50 per hour. In the Mil-

the fee of the associates in the master's law firm will be at the base rate of $40 per hour adjusted by the median rate of inflation for the period.

The special master was permitted to file a brief and his counsel was permitted to present oral argument as amicus curiae in this appeal. Prior to the date of argument he also filed a motion to be permitted to intervene as a party-appellee to "assure that the two actual opposing sides are heard by the Court in the conventional roles of appellant and appellee." The motion is granted.

The judgment of the district court is reversed, and the cause is remanded for further proceedings in accordance with this opinion. The intervenor-appellee will bear costs on appeal.

waukee school desegregation case, the special master was paid $50 per hour and was provided with an office and staff services in the board of education building. *Amos v. Board of School Directors of the City of Milwaukee,* 408 F.Supp. 765 (E.D.Wis.1976). In the Boston school case the compensation of the special master was $200 per day. *Morgan v. Kerrigan,* 401 F.Supp. 270 (D.Mass.1975), *aff'd,* 530 F.2d 401 (1st Cir. 1976).