ANALYTICAL DESIGN & CONSTRUCTION GROUP, INC., a Colorado corporation, Plaintiff,

v.

Robert Kirk MURRAY and Sharron Wolfer Murray, jointly and severally, Defendants-Appellants,

and

Capitol Federal Savings and Loan Association, a Colorado Banking Corporation, Defendant-Appellee.

No. 83CA0565.

Colorado Court of Appeals, Div. II.

Oct. 25, 1984.

Robert K. Murray, Golden, for defendants-appellants.

. Harry M. Williams, Denver, Joanna M. Hoyt, Lakewood, for defendant-appellee.

SMITH, Judge.

Robert and Sharron Murray were named defendants in a mechanic's lien foreclosure action filed against their residence. Capitol Federal Savings and Loan Association (Capitol) provided the financing for the construction of the residence and was also named a defendant in the action. The Murrays cross-claimed against Capitol to recover damages allegedly resulting from Capitol's breach of a commitment to provide the Murrays with a permanent loan when the construction of the residence was completed. Capitol cross-claimed against the Murrays to foreclose on a deed of trust given as security for the construction loan. By stipulation, the Murrays' cross-claim against Capitol was tried to a jury, and at the same time, Capitol's cross-claim in foreclosure was tried to the court. The jury found in favor of Capitol on the Murrays' cross-claim, and the court found in favor of Capitol on its cross-claim against the Murrays. The Murrays appeal the judgment entered on the adverse jury verdict and also the judgment of foreclosure entered on Capitol's cross-claim. We affirm both judgments.

The Murrays were the owners of an unencumbered parcel of vacant land located in a subdivision of Golden, Colorado, known as Paradise Hills. They contacted Capitol to obtain financing to construct a residence on the property and in connection therewith submitted an application for a loan on a form provided by Capitol. The loan application form contained the following language:

"The undersigned applies for the loan indicated in this application to be secured by a *first mortgage* or deed of trust on the property...." (emphasis added)

Apparently, after the loan application was signed by the Murrays, two copies of the application were made. One of these copies was then used as the application for the construction loan and the other for permanent financing. Both applications requested an interest rate of 11¾ percent.

In early August 1980, the Murrays were notified by Capitol that they had qualified for both a construction loan and for permanent financing. The construction loan was closed on August 18, 1980. Repayment of this loan in the principal amount of $128,500, was due on or before August 18, 1981, with interest at 11¾ percent.

At the closing on the construction loan, the Murrays received a permanent loan commitment letter from Capitol which provided, in pertinent part, as follows:

"Please be advised that the loan application submitted in connection with the above referenced transaction has been: Approved, subject to terms substantially different than those requested in your application. The new terms are indicated below:

Amount $128,200.00 Interest Rate PR* Number of months 360

* subject to permanent commitment at *prevailing rate*, inside inspection, final inspection...." (emphasis added)

Prior to the completion of the residence, a dispute arose between the Murrays and the general contractor, Analytical Design & Construction Group, Inc., (Analytical Design) over the costs of the project. Thereafter, both Analytical Design and a subcontractor, Arvada Hardwood Floor Company (Arvada Hardwood), filed mechanics' liens against the property. . By this time approximately $109,000 of the construction loan proceeds had been paid out, and with the acquiescence of the Murrays, Capitol made no further disbursements from the construction loan account. The lien claims of Analytical Design and Arvada Hardwood totalled approximately $46,000.

In July 1981, the Murrays accepted an offer by Capitol to extend, for six months, the due date for payment of the construction loan with an increase in the interest rate from 11¾ percent to 18 percent on condition that the extension would not affect Capitol's commitment to provide the Murrays with permanent financing. In a letter dated August 10, 1981, however, the Murrays advised Capitol that construction would be completed by August 18, 1981, and therefore, an extension of the loan would no longer be necessary.

The Murrays then offered to give Capitol an irrevocable letter of credit for the estimated amount by which the mechanic's lien claims exceeded the balance of the construction loan proceeds and requested that the permanent loan be closed. In response, Capitol offered to provide the Murrays with an "adjustable mortgage loan" with an initial interest rate of 16½ percent, provided the Murrays reached a final settlement with Analytical Design and furnished Capitol with a title commitment policy insuring against mechanics' liens.

At this time, a disagreement surfaced between Capitol and the Murrays as to the meaning of the phrase "prevailing rate" used in Capitol's permanent loan commitment letter. The Murrays claimed that "prevailing rate" referred to the interest rate prevailing at the time the construction loan was closed, *i.e.*, 11¾ percent. Capitol asserted that "prevailing rate" referred to the rate of interest prevailing when construction of the residence was completed and the permanent loan was to be closed.

On September 16, 1981, after the construction of the residence was completed, Analytical Design commenced the present action to foreclose its mechanic's lien. The Murrays cross-claimed against Capitol for breach of its loan commitment on November 2, 1981. During the pendency of the action, the Murrays continued to make the interest payments on the construction loan; however, in May 1982, Capitol declared the loan in default and refused to accept the interest payment tendered by the Murrays.

Thereafter, Capitol filed its cross-claim in foreclosure.

The mechanic's lien claims of Analytical Design and Arvada Hardwood were settled in October 1982, and they are not parties to this appeal. Trial of the cross-claims under consideration here commenced on February 15, 1983.

In their answer to the Murrays' cross-claim and during trial, Capitol asserted that it was relieved of its commitment to provide the Murrays with permanent financing because of the mechanic's lien claims filed against the property. The trial court agreed with Capitol's assertion and instructed the jury as follows:

> "Since Capitol agreed to make a permanent loan based on a first deed of trust position on the Murrays' property, Capitol was justified in refusing to close a permanent loan with the Murrays so long as the mechanic's liens remained of record."

Since Capitol's loan commitment had expired long before the mechanics' liens were released, this instruction was tantamount to a directed verdict in favor of Capitol on the Murrays' cross-claim.

## I.

■ The Murrays suggest here that Capitol's loan commitment remained in effect until after the mechanic's liens were released in October 1982. However, the parties obviously contemplated that the permanent financing would be implemented when construction was completed or, at the latest, when the principal of the construction loan was payable. Thus, under any reasonable interpretation, Capitol's loan commitment could not have continued in effect beyond the extended due date of the construction loan, February 18, 1982, at which time the mechanics' liens were still of record.

## II.

■ At trial the Murrays tacitly acknowledged that Capitol was entitled to a "first mortgage or deed of trust" on the property as a condition to providing permanent financing but argued that the terms "lien" and "mortgage" are not synonymous and that, therefore, they were in a position to provide Capitol with a first mortgage or deed of trust on the property despite the existence of the mechanics' lien claims against the property.

Although semantically accurate, the Murrays' interpretation ignores the context in which the phrase "first mortgage" was used here. Based on the circumstances presented, we agree with the trial court that the phrase "first mortgage or deed of trust" appearing in Capitol's residential loan application form can only reasonably be construed as referring to a mortgage or deed of trust constituting a first lien on the property and not simply to a mortgage or deed of trust having priority over all other mortgages and deeds of trust. *Cf. In re Green's Appeal*, 92 Pa. 342 (1881).

## III.

We also reject the Murrays' contention that the trial court erred in not accepting their tendered instruction on substantial performance.

■ The Murrays apparently tendered this instruction on the theory that they had substantially complied with the "first mortgage" condition of the loan commitment by offering to give Capitol an irrevocable letter of credit for the estimated amount that the mechanic's lien claims exceeded the balance of the construction loan proceeds. The doctrine of substantial performance, however, is generally only applicable to contractual provisions in which a party is affirmatively obligated to perform. *See generally* 3A A. *Corbin, Contracts* §§ 700–701 (1960); 6 S. *Williston, Contracts* (3rd Ed.) § 842 (W. Jaeger 3rd ed. 1962).

Here, Capitol's loan commitment was not a bilateral contract creating mutual obligations on the part of both parties but was, in effect, a unilateral option which the Murrays could exercise or not as they chose. Thus, the Murrays were not affirmatively

obligated to obtain permanent financing from Capitol.

■ Generally, an option can only be exercised by strict compliance with its terms. *See Rollins v. City of Northglenn,* 690 P.2d 250 (Colo.App.1984); *Sports Premiums, Inc. v. Kaemmer,* 42 Colo.App. 172, 595 P.2d 696 (1979). Consequently, the doctrine of substantial performance is not applicable to a unilateral loan commitment such as the one under consideration here. *See Brown-Marx Associates, Ltd. v. Emigrant Savings Bank,* 703 F.2d 1361 (11th Cir.1983); *Johnson v. American National Insurance Co.,* 126 Ariz. 219, 613 P.2d 1275 (Ariz.App. 1980). *See also North Denver Bank v. Bell,* 528 P.2d 413 (Colo.App.1974) (not selected for official publication).

### IV.

■ The Murrays also suggest that they were excused from offering Capitol a first lien position on the property because Capitol would not have given them permanent financing at the prevailing rate when the construction loan was closed even if the mechanics' liens had not been filed against the property. Since this issue was not raised at trial, it is not properly presented for appellate review. *See Millenson v. Department of Highways,* 41 Colo.App. 460, 590 P.2d 979 (1978).

### V.

■ The Murrays also contend that Capitol acted in bad faith in refusing to provide them with permanent financing and in foreclosing on the construction loan. We disagree.

Capitol's insistence on its right to receive a first lien position on the property as a condition to providing the Murrays with permanent financing is not sufficient to support an inference of fraud or bad faith, and this is so even if Capitol did not desire to make the loan because of an increase in the prevailing interest rates. *See Gold v. National Savings Bank,* 641 F.2d 430 (6th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981); *Brown-Marx Associates, Ltd., supra.*

Hence, we conclude that Capitol was entitled to judgment on both cross-claims as a matter of law, and we do not consider the remaining assignments of error raised by the Murrays.

The judgments are affirmed.

ENOCH, C.J., and VAN CISE, J., concur.