2016 COA 4

**Khalil LALEH and Leila Tabrizi, Third Party Defendants–Appellants,**

**and**

**Ali Laleh, Defendant–Appellant,**

v.

**Gary C. JOHNSON and Gary C. Johnson and Associates, LLC, Appellees.**

**Court of Appeals No. 14CA2033**

Colorado Court of Appeals, Div. III.

Announced January 14, 2016

Rehearing Denied February 18, 2016

Evans Case, LLP, Larry Jacobs, Denver, Colorado; Kimball and Nespor, P.C., Charles J. Kimball, Arvada, Colorado, for Third Party Defendant–Appellant Khalil Laleh

Leonard Berenato, Douglas Fogler, Denver, Colorado, for Third Party Defendant–Appellant Leila Tabrizi

Wortsell and Associates Law Offices, David L. Worstell, Thomas Connell, Denver, Colorado, for Defendant–Appellant Ali Laleh

Evans & McFarland, LLC, Scott C. Evans, Denver, Colorado, for Appellees

Opinion by JUDGE FOX

¶ 1 After several family business deals soured, Ali Laleh, Khalil Laleh, and Leila Tabrizi became involved in contentious litigation. They now appeal a judgment granting all of court-appointed expert and special master Gary C. Johnson's fees and costs. We affirm the judgment in part, reverse in part, and vacate in part, and remand with directions.

## I. Background

¶ 2 Ali Laleh and his brother Khalil Laleh (collectively, the brothers) each own various small businesses. Leila Tabrizi is married to Ali and owns related business entities. The litigation started from a forcible entry and detainer (FED) action and an accounting dispute between the brothers about various business dealings. For years the brothers commingled hundreds of thousands of dollars between themselves and their entities.

¶ 3 Because of how the case was litigated, the trial court found it necessary to exercise extensive supervision. The trial court issued orders to help organize the parties, their claims, and eventually restricting further frivolous filings. When it became apparent that the parties' business dealings and finances were difficult to decipher, the trial court appointed Gary Johnson, MBA, CPA, CFF, initially pursuant to Colorado Rule of Evidence 706, as the court's expert to help sort out the various entities' financial and business affairs. The brothers each signed an engagement agreement with Gary C. Johnson and Associates, LLC, outlining the scope of Johnson's work and payment.

¶ 4 The trial court later appointed Johnson as special master pursuant to Colorado Rule of Civil Procedure 53 to enable Johnson to obtain information regarding the lease(s) prepared by an attorney, relevant to the FED claims, where the attorney had refused to provide despite valid waivers of attorney-client privilege.

¶ 5 Johnson first incurred attorney fees in connection with his court-appointed duties in December 2013 when the brothers' former attorney refused to honor a court-issued subpoena. Johnson's attorney accompanied him when sworn statements were given and was copied on Johnson's correspondence with the parties. Beginning with Johnson's January 2014 invoice to the brothers and continuing at least through Johnson's May 2014 invoice to the brothers, Johnson's itemized invoices included a line item under "expenses" specifying amounts billed to Johnson by Johnson's attorney. The brothers paid portions of these invoices before they settled the underlying case in February 2014. The brothers raised no objection to the content of Johnson's billings or to the itemization of attorney fees billed to Johnson by Johnson's attorney until Khalil Laleh sent Mr. Johnson a letter dated March 9, 2014. The letter expressed concern about the inclusion of Johnson's attorney fees in his billings.

¶ 6 After the settlement, the trial court granted the parties' stipulated motions to dismiss and dismissed the case with preju-

dice on February 24, 2014. At that time, Johnson had significant unpaid billings and reported to the trial court that he had not been paid. The court issued an order to show cause why Johnson's invoices had not been paid and held a hearing to determine the reasonableness of Johnson's fees. The record indicates that the brothers did not lodge an objection to Johnson's itemized expenses with the court before their March 20, 2014, responses to the trial court's show cause order. After the hearing, the trial court issued a September 2, 2014, order finding, among other things, that the fees charged were reasonable and ruling that, pursuant to the engagement agreements, the brothers were jointly and severally responsible for Johnson's fees.[1] The trial court then ordered Johnson to submit a proposed order "in the form which would best enable Mr. Johnson to collect these sums from the parties should the parties fail to pay." Johnson submitted a proposed order on September 13, 2014, and the trial court adopted Johnson's proposed order on September 16, 2014.

¶ 7 The parties did not pay Johnson's fees and Johnson's request for contempt citations were stayed by this appeal. In accordance with the September 16 order, the parties and Tabrizi, who had been dismissed from the litigation in a February 24, 2014, order, provided financial information required in the event of the brothers' nonpayment. They also filed this appeal primarily challenging the trial court's September 2 and September 16 orders.

## II. Khalil Laleh's and Ali Laleh's Shared Claims

### A. Due Process Claim

■ ¶ 8 The brothers contend that the trial court violated their rights to due process when it entered Johnson's proposed order three days after it was filed. We generally do not address unpreserved civil issues. *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo.App.2010); *Yeiser v. Ferrellgas, Inc.*, 214 P.3d 458, 461 (Colo.App.2008),

*rev'd on other grounds*, 247 P.3d 1022 (Colo. 2011). Here, because the brothers' due process claim did not arise until after the trial court entered the challenged order, we review the order. *Bailey v. Airgas–Intermountain, Inc.*, 250 P.3d 746, 752 (Colo.App. 2010).

■ ¶ 9 We need not determine whether the entry of the order violated the brothers' rights to due process because the entry of the order violated the procedural rule that governs such orders.

¶ 10 The trial court entered Johnson's proposed order three days after Johnson served it on the brothers. C.R.C.P. 121, section 1–16 allows a party seven days from the time of service to object to the form of a proposed order. Therefore, the trial court erred when it issued the proposed order before allowing the brothers seven days to object as mandated by C.R.C.P. 121.

¶ 11 We therefore vacate the judgment as it pertains to the portion of the September 16 order that relates to the brothers and, because some of the brothers' objections require factual determinations best addressed to the trial court in the first instance, we remand for the trial court to consider the brothers' timely filed objections and re-enter an appropriate order. Regardless of what order may be entered on remand, we expect at least some of the remaining legal issues raised in this appeal to persist, given that we are not disturbing the September 2 order. Accordingly, we address those issues here.

### B. Johnson's Attorney Fees and Post–Settlement Fees

¶ 12 The brothers argue that the trial court erred in (1) ordering that they pay Johnson's attorney fees incurred without express court approval as a part of Johnson's service as a court-appointed expert and special master and during Johnson's attempt to collect his past-due billings; and (2) awarding Johnson's fees incurred after the parties

---

1. Although the appeal purports to focus on Johnson's post-settlement fees, the parties conceded during oral argument that pre-settlement fees also remain unpaid. According to the parties, the brothers owed Johnson $75,000, as of the date of settlement, and $39,000 in post-settlement fees.

to the underlying litigation settled their claims. We disagree with both contentions.

### 1. Trial Court's Appointment of Experts and Special Masters

¶ 13 This case comes to us in a unique posture because it concerns the scope of the court's authority in appointing an expert and a special master. Judges are charged with administering the "just, speedy, and inexpensive determination" of every action. *See* C.R.C.P. 1; Fed.R.Civ.P. 1. There is very little established law in Colorado regarding expenses and fees of court-appointed experts and special masters. CRE 706(b) speaks to compensation of a court-appointed expert, but does not specifically address fees incurred by experts in carrying out their duties.[2] C.R.C.P. 53 is similarly silent about expenses, although it does authorize expert compensation more generally.[3] However, federal courts have addressed the question of fees and costs in similar circumstances and because the Colorado rules are based on, and are very similar to, the federal rules, we will look to the federal cases for guidance. *Garcia v. Schneider Energy Servs., Inc.*, 2012 CO 62, ¶ 7, 287 P.3d 112.

¶ 14 It is fundamental that trial courts are vested with certain inherent powers necessary for courts to act efficiently. *Peña v. Dist. Court*, 681 P.2d 953, 956 (Colo. 1984). These inherent powers include all powers reasonably necessary to allow the court to efficiently perform its judicial functions and to make its lawful actions effective. *Id.*

¶ 15 Under the American Rule, attorney fees are generally borne by the parties incurring them, rather than by a losing party. *See City of Holyoke v. Schlachter Farms R.L.L.P.*, 22 P.3d 960, 964 (Colo.App. 2001) (citing *Bunnett v. Smallwood*, 793 P.2d 157, 161 (Colo.1990)); *see also Allison v. Bank One–Denver*, 289 F.3d 1223, 1244–45 (10th Cir.2002). We do not challenge this basic premise of American law. But, the award of fees and expenses of an impartial court-appointed expert or special master are different than the ordinary application of the American Rule because the expert or master is not a party to the litigation precisely because he is appointed by the court, under the court's authority. The relationship between the court-appointed expert or special master and the litigants is not wholly or even primarily a contractual relationship governed by contract law. Instead, nonpayment of the court-appointed expert or master when the appointing court has ordered the litigants to pay the expert or master directly implicates the authority of the appointing court.[4]

### a. Trial Court's Award of Attorney Fees

#### i. Pre–Settlement Attorney Fees

¶ 16 The brothers challenge whether Johnson was authorized to hire a lawyer, as part of his court-appointed duties, without court approval. Johnson has not cited nor have we found any rule, statute, or Colorado case that authorized him to hire counsel (with the expectation that counsel's fees would be passed on to the litigants). But, it is not

---

2. CRE 706(b) states:

   Expert witnesses so appointed are entitled to reasonable compensation in whatever sum the court may allow. The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the fifth amendment. In other civil actions and proceedings the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs.

3. C.R.C.P. 53(a) notes:

   The compensation to be allowed to a master shall be fixed by the court, and may be charged upon such of the parties.... [W]hen the party ordered to pay the compensation allowed by the court does not pay it[,] after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

4. We recognize that a failure by the litigants to pay the court-ordered fees to an expert or master may be remedied through the court's contempt power under C.R.C.P. 107. A finding of remedial contempt also could justify a court order requiring the contemnor to pay the expert's or master's attorney fees. But as discussed in the text, we conclude that the inherent authority of the court under the circumstance presented also gives the court power to order payment of collection expenses even without a finding of contempt.

necessary for us to decide that question in this case.

¶ 17 Had the brothers raised any objection to Johnson's hiring (and their obligation to pay) counsel as soon as they learned of counsel's role, the trial court could have disallowed the hiring or established boundaries on Johnson's counsel (e.g., a limit on hours, amount billed, etc.) before Johnson incurred these expenses. To be sure, the preferred option would have been to set the boundaries of the court-appointed expert or special master's duties and authority to hire outside professional assistance in the court's order of appointment. *See Bridgeport Guardians, Inc. v. Delmonte,* 537 F.3d 214, 218 (2d Cir. 2008) (noting that a special master has broad power to take necessary measures to do his job); *Reed v. Cleveland Bd. of Educ.,* 607 F.2d 737, 746 (6th Cir.1979) (if master and outside consultants are deemed necessary, the better practice is to set the fees at the time of appointment); Acad. of Court Appointed Masters, Appointing Special Masters and Other Judicial Adjuncts: A Handbook for Judges and Lawyers (2d ed.2009), http://perma.cc/V2XF-5NB6 (listing items to include in appointment orders).[5]

¶ 18 Johnson's January 3, 2014, invoice for his services performed in December 2013 was the first invoice that included the line item for Johnson's attorney fees incurred by Johnson as expenses. The billing clearly showed a charge of $3932.50 from Evans & McFarland, LLC, Johnson's lawyers. Upon receipt of the invoice, the brothers raised no objection to the inclusion of the attorney fees on the itemized bill and indeed each of the brothers made payments on that invoice.

¶ 19 Similarly, Johnson's February 3, 2014, invoice included a line item for attorney fees—this time totaling $10,042.50. The brothers did not object to the content of this invoice. And, before any invoicing, the court and the parties were aware of Johnson's attorney, as he appeared in court and out of court on Johnson's behalf.

¶ 20 The brothers did not challenge Johnson's appointment as a CRE 706 expert or as C.R.C.P. 53 special master. They did not timely challenge Johnson's hiring of a lawyer. The first time they objected to the content of any billing was when Khalil Laleh sent his personal letter to Johnson in mid-March. Under these circumstances, even if the brothers had a valid objection to paying Johnson's attorney fees, they waived it. *See, e.g., Campbell v. Summit Plaza Assocs.,* 192 P.3d 465, 475 (Colo.App.2008); *see also In re Cmty. Bank of N. Va.,* 622 F.3d 275, 287 n. 12 (3d Cir.2010) (concluding that the challenge to appointment of the special master was waived and declining to address it on appeal); *Fajardo Shopping Ctr., S.E. v. Sun All. Ins. Co. of P.R., Inc.,* 167 F.3d 1, 5–6 (1st Cir.1999) (lack of timely objection to appointment of a special master amounts to consent)[6]; *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1410 (9th Cir.1990) (objection to the appointment of a special master must be timely or it is waived); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1566 (Fed.Cir.1988) (same).

¶ 21 We therefore hold that the brothers' belated objection to Johnson's attorney fees for work performed by the attorney before the settlement of the case was waived by the brothers' failure to timely object to Johnson's retention of a lawyer and by the prior payment of at least some of those fees.

### ii. Post–Settlement Attorney Fees

■ ¶ 22 The brothers also challenge the court's award of Johnson's fees incurred after the parties settled their claims. Most, but not all, of these fees post-dated the

---

**5.** As Johnson was not an attorney, he was not generating duplicate fees. In *Reed v. Rhodes,* 691 F.2d 266, 269–70 (6th Cir.1982), the court disallowed a special master, who was an attorney, to collect both his own fees incurred in defending the district court's fee award and fees incurred from hiring outside counsel to defend the action. The Sixth Circuit held that this sort of "doubling up" of fees was not allowed because the work of the master and his attorney was essentially the same. As an accounting expert, Johnson did not duplicate his attorney's work.

**6.** In addition to concluding the parties consented to the appointment of the special master, the court also indicated that the failure to timely raise the issue to the trial court waived the objection on appeal. *Fajardo Shopping Ctr., S.E. v. Sun All. Ins. Co. of P.R., Inc.,* 167 F.3d 1, 5–6 (1st Cir.1999).

brothers' belated objection to the payment of such fees. The attorney fees, which Johnson incurred after the settlement was reached and the parties' dismissal stipulations were given effect, were proper pursuant to the trial court's inherent authority, discussed further below, to give effect to its prior orders. *See, e.g., Feigin v. Colo. Nat'l Bank, N.A.,* 897 P.2d 814, 820 (Colo.1995) (trial court has authority to craft rules to enforce its orders); *Lauren Corp. v. Century Geophysical Corp.,* 953 P.2d 200, 203–04 (Colo.App.1998) (fee award was within trial court's inherent authority).

### b. Trial Court's Award of Johnson's Post–Settlement Fees

¶ 23 After the court's appointment, the brothers each signed identical engagement agreements with Johnson that governed Johnson's services and fees as the court-appointed expert and special master.[7] The agreement outlined the professional relationship, scope of services, and fees:

GARY C. JOHNSON AND ASSOCIATES has been retained to provide the Services set out below....

. . . .

Although the Services are subject to change, as mutually agreed between us, the Services shall include: Performance as a court appointed expert in [the underlying case].

. . . .

You agree that you, Khalil Laleh and Ali Laleh are jointly and severally liable for the timely and complete payment of all fees and expenses of GARY C. JOHNSON AND ASSOCIATES.

. . . .

We will also bill you reasonable out-of-pocket expenses.

¶ 24 In determining that the engagement agreement allowed Johnson to collect costs and expenses incurred in the collection of his past due fees, the trial court held that the engagement agreement's terms speak explic-

itly to the issue. The trial court held that the reference to the brothers' joint and several liability for the payment of "all fees and expenses" encompasses time spent collecting past due monies.

¶ 25 We disagree that the contract so clearly speaks to the issue of costs incurred in the collection of past due fees. Nothing in the relevant language of the contract explicitly mentions collection costs.

¶ 26 *Zambruk v. Perlmutter 3rd Generation Builders, Inc.,* cited by the trial court as authority for the proposition that a party who is entitled to a judgment for fees is also entitled to costs incurred collecting those costs, is not entirely on point. 32 Colo.App. 276, 280–82, 510 P.2d 472, 475–76 (1973). In *Zambruk,* the contracts at issue contained a specific collection cost clause stating that in the event collection was necessary, the client agreed to pay all costs and attorney fees incurred in collection. *Id.* at 280–81, 510 P.2d at 475. The court there held that in accordance with the terms of the contract, it was proper to award collection costs. *Id.* at 281, 510 P.2d at 476.

¶ 27 Unlike the contract in *Zambruk,* the engagement agreement contains no language explicitly addressing collection costs. Therefore, reliance on *Zambruk* is misplaced. At the same time, the engagement agreement does not prohibit the award of costs of collection to Johnson; the contract is silent on the issue.

¶ 28 Although we disagree with the trial court's interpretation of the terms of the engagement agreement, under the special circumstances presented we do not think the trial court abused its discretion in awarding Johnson's collection costs. *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 406 (Colo.App.2004) ("[W]e may affirm the trial court's ruling based on any grounds that are supported by the record."). The court's inherent authority has been consistently applied in situations sufficiently simi-

---

7. The interpretation of a contract is a question of law which we review de novo. *Fed. Deposit Ins. Corp. v. Fisher,* 2013 CO 5, ¶ 9, 292 P.3d 934. However, the decision to award fees, including expert witness fees, is within the sound discre-

tion of the trial court, and we will not reverse the award absent a clear abuse of discretion. *Trinity Universal Ins. Co. v. Streza,* 8 P.3d 613, 619 (Colo.App.2000).

lar to the circumstances presented here. *See, e.g., Feigin,* 897 P.2d at 820; *Lauren Corp.,* 953 P.2d at 203–04. Accordingly, we conclude the trial court had the authority to require the brothers to pay Johnson's collection costs.

¶ 29 In *Feigin,* the supreme court held that under a trial court's equitable authority, it could condition its denial of a motion to quash an administrative subpoena on the party's payment of costs related to the opponent's expenses incurred in producing the desired information. 897 P.2d at 820. The trial court issued a subpoena duces tecum ordering the bank to produce various financial records. *Id.* at 816. The bank moved that the commissioner requesting the information should pay the bank's reasonable expenses incurred in complying with the subpoena. *Id.* The trial court agreed and ordered the bank to produce the documents on the condition that the commissioner pay the bank's costs. *Id.* On appeal, the supreme court agreed that the trial court was vested with authority to enforce administrative subpoenas and to craft rules to ensure their enforcement. *Id.* at 820. Citing the trial court's equitable authority to ensure enforcement of its orders, the supreme court upheld the trial court's action as within its inherent authority. *See id.*

¶ 30 In *Lauren Corp.,* a division of this court held that, pursuant to the trial court's inherent power to ensure the effectiveness of its orders, the trial court could properly impose attorney fees and costs as a discovery sanction. 953 P.2d at 204. The trial court had imposed sanctions for discovery misconduct but did not issue a specific discovery order pursuant to C.R.C.P. 37. *Id.* at 203. On appeal, the division upheld the trial court's award of fees as valid under the trial court's inherent authority to administer justice. *Id.* at 204. The division noted that denying the trial court the inherent power to award sanctions, including attorney fees, in the specific circumstance would encourage misconduct by unscrupulous litigants. *Id.*

¶ 31 The situation here is similar to what the *Lauren Corp.* division faced. We have not found any case in Colorado that explicitly allows a court, as a valid exercise of its inherent powers, to award costs incurred in the collection of the fees of a court-appointed expert or special master. And the parties do not cite to any case that disallows such an award. But, the trial court here ordered that the brothers pay Johnson's fees for work performed before the underlying litigation settled. Therefore, the court's order that the brothers pay for Johnson's costs involved in collecting those monies owed is an order which serves to give effect to the trial court's earlier order that the fees be paid. This type of action is within the trial court's inherent authority to administer justice and to make its actions effective. *See Feigin,* 897 P.2d at 820; *Peña,* 681 P.2d at 956; *Lauren Corp.,* 953 P.2d at 203–04.

■ ¶ 32 Fairness and efficient operation of the judicial system dictate that we ensure that those appointed by the court to assist the court are appropriately compensated. *See Norris v. Green,* 317 F.Supp. 100, 102 (N.D.Ala.1965); *Valenstein v. Bayonne Bolt Corp.,* 6 F.R.D. 363, 365–66 (E.D.N.Y.1946). This includes honoring the trial court's discretion to grant such fees as it deems necessary to collect outstanding balances due to a court-appointed expert or special master. A contrary holding would create a disincentive to those whose assistance the court may seek in various capacities.

¶ 33 The trial court acted within its inherent authority when it ordered the brothers to pay Johnson's collection costs. Because the trial court's action was not arbitrary or contrary to law, there was no abuse of discretion in the court's grant of these fees. *See Trinity Universal Ins. Co.,* 8 P.3d at 619.

c. Reasonableness of the Collection Costs

¶ 34 The brothers concede that their argument that the trial court erred in refusing to adjust Johnson's hourly cost to that of a collection professional was not made in the trial court. However, the brothers argue that we should nonetheless address their argument to avoid unequivocal and manifest injustice. *See Wycoff v. Grace Cmty. Church of Assemblies of God,* 251 P.3d 1260, 1269 (Colo.App.2010).

¶ 35 Appellate review of unpreserved civil claims is extremely limited. *Id.* This type of review is only appropriate in a rare case involving special circumstances and only when necessary to prevent unequivocal and manifest injustice. *Id.*

¶ 36 The brothers contend that because the trial court did not specifically rule on the reasonableness of Johnson's normal hourly rate for time spent attempting collection, and because Johnson testified that he charged the same rate agreed on in the engagement letter for time spent attempting collection, this is the type of manifest injustice that warrants our review absent proper preservation. We disagree. This situation does not meet the demanding standard articulated above. *Id.* Therefore, we will not address the brothers' argument.

### C. Judgment for Individual or Entity

¶ 37 The brothers further argue that because Johnson was appointed individually to serve as the court expert and special master, the trial court erred when it entered judgment for Gary C. Johnson and Associates, LLC. Because we have reversed the judgment as it relates to the challenged order and we do not know what order may be entered in its stead, we decline to address this argument.

### D. Colorado Rules of Civil Procedure 69 and 107

¶ 38 The brothers next argue that the trial court erred when it ordered them to disclose significant personal and business financial information without utilizing the subpoena provision of C.R.C.P. 69 and the motion provisions of C.R.C.P. 107. Because we have reversed the judgment as it relates to this order, and we do not know what order may be entered in its stead, we decline to address this question.

### III. Khalil Laleh's Additional Claims

#### A. Joint and Several Liability

¶ 39 Khalil Laleh claims that the trial court erred when it ordered that the brothers were jointly and severally liable for the payment of Johnson's fees rather than ordering an allocation of several, but not joint, liability. Because this issue is likely to arise again when the court enters a substitute order, we address this issue.

#### 1. Standard of Review and Preservation

¶ 40 The parties dispute which standard of review we should apply to evaluate the trial court's allocation of Johnson's costs and fees jointly and severally between the brothers. While no Colorado case speaks specifically to the applicable standard of review for the present claim of error, which involves the trial court's award of court-appointed expert or special master fees and application of the contractual terms of the engagement agreement, federal courts have interpreted the language of Fed.R.Evid. 706—which is substantially similar to CRE 706—as granting the trial court discretion to also apportion the costs incurred by the expert among the parties. *See, e.g., Ledford v. Sullivan,* 105 F.3d 354, 360–61 (7th Cir.1997) (upholding trial court's discretionary action regarding costs of a Fed.R.Evid. 706 expert); *Steele v. Shah,* 87 F.3d 1266, 1271 (11th Cir.1996) (trial court had discretion to appoint and compensate Fed.R.Evid. 706 expert); *McKinney v. Anderson,* 924 F.2d 1500, 1511 (9th Cir.) (same), *vacated and remanded on other grounds by Monroe Clinic v. Nelson,* 502 U.S. 903, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991); *Webster v. Sowders,* 846 F.2d 1032, 1038–39 (6th Cir.1988) (same); *U.S. Marshals Serv. v. Means,* 741 F.2d 1053, 1059 (8th Cir.1984) (same). Therefore, we review the trial court's assignment of compensation as well as allocation of payment of a court-appointed expert under CRE 706 for an abuse of discretion.

¶ 41 It is undisputed that Khalil Laleh preserved this issue for appeal.

#### 2. Law and Analysis

¶ 42 In addition to deferring to the discretion of the trial court in appointing, and determining the compensation of, an expert under Fed.R.Evid. 706(c), the federal courts hold that it is also within the discretion of the trial court to allocate the costs among the parties. *See, e.g., Ledford,* 105 F.3d at 360–61; *McKinney,* 924 F.2d at 1511. This in-

cludes the ability of a trial court to, within its discretion, apportion all of the costs to one side. *McKinney,* 924 F.2d at 1511. Given the nearly identical language in CRE 706 and Fed.R.Evid. 706, we will apply the same approach and analysis as the federal courts apply to similar issues regarding cost apportionment under the federal rule. *See Garcia,* ¶ 7.

¶ 43 The engagement agreement stated clearly that the brothers "are jointly and severally responsible for the timely and complete payment of all fees and expenses...."

¶ 44 Khalil Laleh argues that the trial court's initial intention, articulated in its omnibus order of September 18, 2013, was to order that the brothers each pay one half of Johnson's fees and, therefore, that each brother is only liable for his own half of the fees. We disagree. The trial court stated this intention before the engagement agreement existed and the brothers knowingly signed the engagement agreement which clearly mentioned joint and several liability. Additionally, the trial court's decision to accept the terms of the engagement agreement and then order that the brothers were jointly and severally responsible for Johnson's fees was within its discretionary authority to grant and apportion fees under CRE 706(b).

¶ 45 We therefore hold that the trial court may (but is not required to) impose joint and several liability when it enters a substitute order.

## B. Equitable Adjustment of Fees

¶ 46 Khalil Laleh further contends that the trial court erred in refusing to consider, and in failing to grant him, an equitable adjustment of his liability for Johnson's fees. He argues that Johnson incurred more fees working with Ali Laleh and consequently it was not fair to apportion liability for costs equally between the brothers. The issue may be raised again on remand, and we do not know what order may be later entered, so we decline to address this argument.

## IV. Ali Laleh's Claim of Impartiality

¶ 47 Ali Laleh requests that, upon remand, a different trial court judge be appointed to handle the case due to biases of the trial court judge. We decline the request.

¶ 48 Whether disqualification is necessary is a legal determination which we review de novo. *Wilkerson v. Dist. Court,* 925 P.2d 1373, 1376 (Colo.1996). Disqualification of a judge in a civil case is governed by C.R.C.P. 97. However, the brothers did not file a motion to disqualify the trial judge. Therefore, there is nothing before us to review.

## V. Leila Tabrizi's Appeal

¶ 49 Tabrizi contends that the trial court erred when it ordered her to disclose significant personal and business financial information because she was not a party when the order was entered and she was not then subject to the jurisdiction of the court. We agree.

¶ 50 Tabrizi was dismissed as a party to the lawsuit as a part of the trial court's February 2014 order which dismissed with prejudice all claims. The only matters remaining after the dismissal order were matters of fees and costs, which did not affect the finality of the dismissal order. C.R.C.P. 58(a); *Baldwin v. Bright Mortg. Co.,* 757 P.2d 1072, 1074 (Colo.1988).

¶ 51 As a nonparty to any remaining collateral matters in the lawsuit, the trial court lacked jurisdiction over Tabrizi, as a party, to order Tabrizi to turn over her personal financial information. Upon proper application, Tabrizi, like any other nonparty, is subject to the provisions of C.R.C.P. 69, but that is not the basis upon which the court entered its order against Tabrizi.

¶ 52 We therefore vacate the portion of the judgment that pertains to the trial court's order of September 16 as it relates to Tabrizi.

## VI. Johnson's Appellate Attorney Fees

¶ 53 Johnson requests that we award his attorney fees incurred in defending this appeal because the claims made and argued on appeal are frivolous and vexatious.

¶ 54 Because the engagement agreement does not speak to attorney fees incurred in

defending frivolous or meritless claims, we cannot award fees based on the engagement agreement.

¶ 55 Under section 13–17–102(4), C.R.S.2015, this court must assess attorney fees if a party has "brought or defended an action ... that lacked substantial justification." "An action lacks substantial justification if it is 'substantially frivolous, substantially groundless, or substantially vexatious.'" *Castillo v. Koppes–Conway*, 148 P.3d 289, 292 (Colo.App.2006) (quoting § 13–17–102(4)). "[A]n appeal 'lacks substantial justification' and is 'substantially frivolous' under [section] 13–17–102(4) when the appellant's briefs fail to set forth, in a manner consistent with C.A.R. 28, a coherent assertion of error, supported by legal authority." *Id.*

¶ 56 Due to the merit of the brothers' C.R.C.P 121 argument and the absence of controlling law on many of their other claims, we cannot say that the brothers' claims are substantially frivolous, groundless, or vexatious. *See id.* The brothers' action therefore does not lack substantial justification. *See id.* Tabrizi's action is similarly meritorious.

¶ 57 Johnson's request for appellate attorney fees is denied.

## VII. Conclusion

¶ 58 The judgment is affirmed in part, reversed in part, and vacated in part, and the case is remanded as we have directed here. The judgment is affirmed as it concerns the trial court's September 2, 2014, order. The judgment is reversed as it pertains to the trial court's September 16, 2014, order, as that order relates to the brothers, but on remand the trial court may enter a substitute order against the brothers after considering all of the brothers' timely filed objections. The judgment is vacated as it pertains to the trial court's September 16, 2014 order, as that order relates to Tabrizi. Johnson's request for appellate attorney fees is denied.

JUDGE BERGER concurs.

JUDGE WEBB concurs in part and dissents in part.

JUDGE WEBB, concurring in part and dissenting in part.

¶ 59 As to both Mr. Johnson's own time and fees of the attorney whom he retained— without court permission—incurred *after* he was notified that because the case had settled, he should cease work, the inherent authority doctrine should not be applied for the first time on appeal to affirm the order that the Lalehs pay these sums. In any event, this order was also contrary to the contract—prepared by Mr. Johnson—that he and the Lalehs entered into. Therefore, and with respect, I dissent from those portions of the majority opinion that affirm the court's order holding the Lalehs liable for collection costs.

### I. Introduction

¶ 60 The factual background for this separate opinion is undisputed.

¶ 61 Upon his court appointment, Mr. Johnson and the Lalehs entered into a contract for his professional services. Before the case settled, Mr. Johnson retained an attorney. Neither the contract nor the order of appointment authorized him to do so. Yet, he failed to request court permission or obtain the Lalehs' consent.

¶ 62 When the case settled, the Lalehs promptly notified Mr. Johnson of the settlement and directed him to cease all work. Shortly thereafter, one of the Lalehs questioned a billing that included fees for Mr. Johnson's attorney. At that point, Mr. Johnson's only ongoing relationship to the Lalehs was of creditor to debtors.

¶ 63 Like any other creditor, he invested some of his own time and incurred legal expenses in the collection effort. The reasonableness of those efforts was undisputed below, and the majority properly declines to address it for the first time on appeal. But neither the contract nor the appointment order authorized Mr. Johnson to recover collection costs.

### II. Law

¶ 64 The majority describes this case as having "come[ ] to us in a unique posture." Be that as it may, neither Mr. Johnson's brief nor the majority opinion includes *any*

authority expressly upholding an ex post facto order allowing a special master or similar court appointee to recover costs of collection. Alone, this void gives me pause.

¶ 65 The majority also makes two concessions that give me further pause.

- "C.R.C.P. 53 is similarly silent about expenses although it does authorize expert compensation more generally."
- "[T]he better practice is to set the fees at the time of appointment," citing *Reed v. Cleveland Board of Education*, 607 F.2d 737, 746 (6th Cir.1979).

¶ 66 The majority holds that the Lalehs waived any objection to payment of attorney fees incurred by Mr. Johnson because they did not question them until about three weeks after the case had been dismissed. While I concur in that portion of the opinion, the rationale does not warrant recovery of post-settlement attorney fees, for two reasons.

¶ 67 First, because Mr. Johnson incurred most—if not all—of the post-settlement attorney fees after one of the Lalehs objected to having been billed for such fees, this objection ends the waiver. And more importantly, acquiescence in Mr. Johnson's use of an attorney to facilitate discharge of his special master duties hardly consents to being liable for the fees of a collection attorney.

¶ 68 Second, the majority rejects the trial court's view "that [Mr. Johnson's] contract so clearly speaks to the issue of costs incurred in the collection of past due fees. Nothing in the relevant language of the contract explicitly mentions collection costs.... [W]e disagree with the trial court's interpretation of the terms of the engagement agreement." I agree.

¶ 69 The majority fills this gap by invoking the doctrine of inherent authority, citing *Feigin v. Colorado National Bank, N.A.*, 897 P.2d 814, 820 (Colo.1995); *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo.App.2004); and *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 203–04 (Colo.App.1998). But the trial court did not mention this doctrine, much less rely on it. Nor was it argued below by Mr. Johnson.

¶ 70 Everyone would agree that appellate courts can and often do uphold lower court actions for a different reason from that relied on by the lower court, provided the new reason finds support in the record. But the exercise of inherent power is a matter of discretion. *Randleman Excavating Co., Inc. v. Hoder*, 522 P.2d 1240, 1241 (Colo.App. 1974) (not published pursuant to C.A.R. 35(f)) ("This inherent power rests in the sound discretion of the trial court."). Who can say whether the trial court would have done so, had it concluded—as the majority does—that Mr. Johnson's contract with the Lalehs did not cover collection costs?

¶ 71 With only this much for guidance, the order should be vacated as to collection costs and the case remanded for the trial court to exercise its discretion. *See Glover v. Innis*, 252 P.3d 1204, 1211 (Colo.App.2011) ("Because of its interpretation of the statute, the trial court did not determine whether ... those statements themselves would be independently admissible. On remand, the trial court must exercise its discretion under the statute in accordance with this opinion."); *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 79 (Colo.App.2009) ("[W]hether to exercise that discretion must be determined in the first instance by the trial court, and thus we remand for the trial court to consider this issue.").

¶ 72 Still, in my view remand would be futile because even if a trial court's order allowing a special master or similar court appointee to recover collection costs might under some circumstances be justified using the inherent power doctrine, I would decline to do so here for one additional reason: allowing Mr. Johnson to recover collection costs violates the Lalehs' contract with him, on which the trial court expressly relied in rejecting the Lalehs' arguments invoking the American Rule, ("The court finally finds that Mr. Johnson's legal fees constitute part of 'all fees and expenses' of Mr. Johnson....").

¶ 73 Of course, a court may decline to enforce a contract for many reasons. But Mr. Johnson has not sought to disavow his contract. To the contrary, and at his urging, the trial court relied on it—mistakenly, as the majority correctly holds—to afford him recovery of collection costs.

¶ 74 Because the contract was bilateral, both Mr. Johnson and the Lalehs had obli-

gations under it. *Analytical Design & Constr. Grp., Inc. v. Murray*, 690 P.2d 269, 272 (Colo.App.1984) ("Here, Capitol's loan commitment was not a bilateral contract creating mutual obligations...."). And the Lalehs' obligations to Mr. Johnson did not extend to paying his costs of collection, including attorney fees. *See generally Allison v. Bank One–Denver*, 289 F.3d 1223, 1244–45 (10th Cir.2002) (applying Colorado law to disallow recovery of attorney fees incurred in enforcing an indemnity agreement).

¶ 75 Thus, in choosing to contest—rather than pay—Mr. Johnson's claims for his fees and those of his attorney, the Lalehs had no reason to include in their risk analysis being held liable for his collection costs. "Courts cannot make contracts for parties and then order them specifically performed." *Schreck v. T & C Sanderson Farms, Inc.*, 37 P.3d 510, 514 (Colo.App.2001). Yet, by affirming under the doctrine of inherent judicial authority, the majority does just that here. Thus, I would reverse the collection costs portion of the order as an unlawful modification of a valid contract.