The LAUREN CORPORATION,
a Colorado corporation,
Plaintiff–Appellee,

v.

CENTURY GEOPHYSICAL CORPO-
RATION, an Oklahoma corpora-
tion, Defendant–Appellant.

No. 96CA0554.

Colorado Court of Appeals,
Div. I.

Jan. 22, 1998.

Springer and Steinberg, P.C., Jeffrey A. Springer, Susan Fuller, Denver, for Plaintiff–Appellee.

Friedlob, Sanderson, Raskin, Paulson & Tourtillott, L.L.C., Michael J. Norton, Denver, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Century Geophysical Corporation (Century), appeals from a judgment and order in favor of plaintiff, The Lauren Corporation (Lauren), awarding damages and sanctions against Century in connection with Lauren's suit concerning breach of licensing agreements to use certain computer processing software. We affirm.

Lauren sued Century alleging "infringement," interference with contractual relations, abuse of process, breach of contract, and misappropriation of trade secrets. Century denied the allegations and counterclaimed for conversion, interference with contractual relations, interference with prospective business advantage, and a violation of the Colorado Uniform Trade Secrets Act.

Lauren, a Colorado corporation, used certain computer software developed by a third party. Lauren acquired substantially all of the assets of this third party, including the computer software at issue here, through an assignment.

This assignment was subject to various license agreements that allowed others in the industry to use the software. Pertinent here is a license agreement entered into by the third party with ARMA Geophysical Company (ARMA) before the assignment to Lauren. Century, an Oklahoma corporation that had Denver offices, succeeded to ARMA's position as licensee. However, the license agreement acquired by Century contained a restriction on transferability. That restriction prevented the licensee from sublicensing, selling, marketing, leasing, transferring, or otherwise disposing of the software to a third person, subject to exceptions not relevant here.

Nevertheless, Century attempted to negotiate with other companies to allow them to use the software. Following discussions between Lauren and Century regarding the proper enforcement of the license agreement, Century filed a declaratory judgment action against Lauren in Oklahoma in May 1992. The suit was dismissed for lack of personal jurisdiction, and the Oklahoma Court of Appeals affirmed. This action followed disposition of the Oklahoma proceeding.

During the discovery phase in this litigation, Lauren attempted over a period of time to inspect Century's computers, seeking evidence to support its claim that Century had used the software on unauthorized computers. Almost one year after Lauren filed its third set of interrogatories and request for production of documents, and after a magistrate had ordered that Lauren be allowed to

conduct a physical inspection of the computers, the trial court granted Lauren's motion for sanctions against Century for destruction of evidence based on Century's disposal of certain computer hardware. Lauren does not allege that counsel for Century had any prior knowledge that Century had destroyed the hardware.

As a sanction, the trial court imposed a presumption at trial that Century had used the software on machines other than those described in the licensing agreements and further awarded Lauren its attorney fees and costs incurred in its attempts to gain access to the hardware through discovery.

In this appeal, Century appeals only from the trial court's judgment for Lauren on its abuse of process claim and the imposition of attorney fees and costs as part of the sanction relating to the destruction of evidence.

## I. Abuse of Process

■ Century first contends that the trial court erred as a matter of law in finding that Century's Oklahoma suit constituted an abuse of process. We disagree.

■ A claim for abuse of process requires proof of the following elements: (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage. *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367 (Colo.App.1994).

Further, a fourth element is added to the analysis when a claim for abuse of process is premised upon an action that constitutes an exercise of a First Amendment right. *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail, supra.*

■ Significantly, the First Amendment right to petition the government for redress of grievances necessarily includes the right of access to the courts. However, the right to petition the government does not grant a license to use the courts for improper purposes. *Protect Our Mountain Environment v. District Court*, 677 P.2d 1361 (Colo.1984). Thus, when, as here, the First Amendment is

implicated, a claimant must also prove that the action taken lacked a reasonable factual basis or, if so supported, that it lacked a cognizable basis in law. *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail, supra.*

The division in *James H. Moore & Associates Realty, Inc., v. Arrowhead at Vail, supra*, 892 P.2d at 373, emphasized that a claim for abuse of process must include an allegation of "the use of process to accomplish a coercive goal which is not the intended legal purpose of the process."

In *Protect Our Mountain Environment v. District Court, supra*, the supreme court held that an abuse of process claim could be predicated on the filing of a prior lawsuit lacking any reasonable basis in fact or law and used primarily for some improper collateral purpose.

Here, the trial court found all of the elements necessary to sustain an abuse of process claim. First, it found that Century had an ulterior purpose, i.e., using the Oklahoma litigation to "get Lauren to roll over" and to consent to the transfer of the software to a third party in violation of the licensing agreement. This finding is supported by the record.

Second, the trial court found that Century willfully used the Oklahoma proceedings in an improper manner. Determining that Century did not file the complaint to seek the relief requested, including declaratory judgment, damages, and a restraining order, the trial court concluded that the actual purpose of the litigation was to coerce Lauren to allow a transfer of its software to a third party. The trial court explicitly rejected Century's contention that the suit was an attempt at settlement, emphasizing that Century chose to file the action in "an inconvenient court that obviously and clearly lacked jurisdiction...."

Recognizing that Century's request for declaratory judgment, unlike the other claims contained in the complaint, was not frivolous, the trial court nonetheless concluded that:

[T]he declaratory judgment claim was filed with the same willful intent not to

obtain a declaratory judgment but to coerce the plaintiff into a transfer of the software [to a third party]. This threat is clearly expressed [by the evidence]. This was the defendant's ulterior purpose for use of the judicial proceeding and is not a proper use in the regular course of such proceedings.

Third, the trial court found that Lauren had suffered damages in having to defend the Oklahoma suit. This finding, too, is supported by the record.

Fourth, the trial court implicitly determined that the last element of an abuse of process claim was met because the action lacked any basis in law. As noted, the Oklahoma action lacked the essential element of *in personam* jurisdiction. Indeed, in affirming the dismissal of the action, the Oklahoma Court of Appeals determined:

> Century does not allege that any act was committed by Lauren in Oklahoma. In an apparent attempt to show some contacts by Lauren with Oklahoma, Century did append three letters to its trial court response that were from Lauren's counsel—one to Century in an apparent attempt to resolve the dispute and two letters during litigation addressed to Century's trial counsel. Century does not specifically claim these communications constitute sufficient minimum contacts, and we find the letters to have nothing to do with the purported wrong of which Century complains.

*Century Geophysical Corp. v. The Lauren Corp.,* (Okla.App. No. 80,547, February 22, 1994) (not for official publication). We conclude that, since Century did not in any way allege a basis for *in personam* jurisdiction, the Oklahoma litigation lacked a cognizable legal foundation.

Thus, we conclude that the trial court properly awarded damages to Lauren on its abuse of process claim.

## II. Destruction of Evidence

■ Century next contends that the trial court erred in imposing sanctions on it for the destruction of certain computer hardware. Specifically, Century argues that the imposition of such sanctions was inappropriate under C.R.C.P. 37. However, Century's reliance on C.R.C.P. 37 is misguided.

Century is correct in its assertion that sanctions pursuant to C.R.C.P. 37 may not be imposed for destruction of evidence when the party seeking sanctions did not first obtain an order compelling production of that evidence. *See* C.R.C.P. 37. However, that does not end the analysis because here the trial court determined that such sanctions do not necessarily have to be based on a violation of C.R.C.P. 37.

As the trial court framed the issue: "This is not about motions and orders to compel, this is about destruction [of] evidence, and an order to compel is not necessary." Thus, we must determine whether the trial court properly concluded that it had authority to impose such sanctions, including an award of attorney fees, absent a discovery order. We conclude that it did.

We note that Lauren did not argue in the trial court that it was entitled to attorney fees under § 13–17–102, C.R.S.1997, as a sanction for vexatious litigation. Likewise, no such contention has been made in this appeal.

■ Trial courts have certain inherent powers which are:

> reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore it has the powers reasonably required to act as an efficient court.

*Pena v. District Court,* 681 P.2d 953, 956 (Colo.1984).

■ Further, a division of this court has held that it is within the trial court's discretion to impose sanctions for spoliation of evidence in the form of an adverse inference where there is a showing that the destruction of evidence was intentional. Implicit within this holding is the recognition that the trial court has the inherent power to impose such sanctions. *See Rodriguez v. Schutt,* 896 P.2d

881 (Colo.App.1994), *rev'd on other grounds,* 914 P.2d 921 (Colo.1996).

Unlike the question whether the trial court has the power to employ presumptions or adverse inferences as a sanction for the spoliation of evidence, the question whether the trial court has the inherent authority to order an award of attorney fees and costs under the same circumstances has not been addressed by the Colorado courts.

▮ We recognize that, generally, under the American Rule, in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action. *See Bernhard v. Farmers Insurance Exchange,* 915 P.2d 1285 (Colo.1996).

Nevertheless, Colorado's appellate courts have recognized exceptions to the American Rule in at least five different circumstances. These exceptions include where: (1) the "common fund" doctrine is applicable; (2) a party has exhibited bad faith and lack of candor in dealing with the court; (3) there has been a breach of fiduciary duty; (4) there has been a breach of trust; and (5) a party's wrongful act has proximately caused the wronged party to become engaged in litigation with others. *See Bernhard v. Farmers Insurance Exchange, supra,* 915 P.2d at 1287 n. 3 (collecting cases).

The case cited by the supreme court in the second category was *Johnston v. District Court,* 196 Colo. 1, 580 P.2d 798 (1978). There, the supreme court affirmed a trial court's award of attorney fees imposed as a condition of granting a motion to set aside a default judgment because of the defendant's lack of good faith and lack of candor in dealing with the court. Rejecting the argument that a trial court could award attorney fees only when specifically authorized by statute, court rule, or contract, the *Johnston* majority upheld the trial court's award of attorney fees under its inherent authority to administer justice fairly.

Similarly, in *In re Marriage of Roberts,* 757 P.2d 1108 (Colo.App.1988), a division of this court determined that a trial court had the authority to order a party to pay attorney fees incurred in a contempt proceeding. That decision, made before C.R.C.P. 107 was amended to provide specifically for awards of attorney fees, was based upon the trial court's inherent authority. *See also Peat, Marwick, Mitchell v. Superior Court,* 200 Cal.App.3d 272, 245 Cal.Rptr. 873 (1988) (trial court's inherent power to curb abuses of the litigation process and to promote fairness may include imposition of an attorney fee award); *Figgie International, Inc. v. Alderman,* 698 So.2d 563 (Fla.Dist.Ct.App.1997) (court upheld imposition of costs as a sanction against party for willful and bad faith destruction of evidence; sanction based upon inherent power of court and in the absence of violation of a discovery order).

▮ Accordingly, we hold that a trial court may impose attorney fees and costs as a sanction for the bad faith and willful destruction of evidence, even in the absence of a specific discovery order.

We note that the opposite result—denying the court the inherent power to award sanctions, including attorney fees, where evidence has been intentionally destroyed—would only encourage unscrupulous parties to destroy damaging evidence before a court order has been issued. *See Brenner v. Kolk,* 226 Mich. App. 149, 573 N.W.2d 65 (1997).

The question thus becomes whether the imposition of attorney fees and costs as part of the sanction here was within the discretion of the trial court.

▮ A reviewing court can conclude that the trial court abused its discretion only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994).

Here, the trial court concluded that Century's actions constituted "a blatant, willful bad faith destruction of evidence...." Specifically, the trial court determined that the complaint filed by Lauren put Century on notice of the issue regarding Century's unauthorized use of the software in controversy on certain computers almost one year before the hardware was destroyed. Further, the record shows that, as early as March 1994, Lauren served on Century its first of three sets of interrogatories and requests for production of documents seeking information regarding the computer hardware used by Century for the processing of geophysical data since March 15, 1991.

A dispute regarding Century's responses to Lauren's first, second, and third sets of discovery arose, and, at Century's request, Lauren drafted a proposed stipulated protective order in October 1994 concerning confidentiality to help facilitate the discovery process. However, because of continued delay on Century's part, that order was not entered until February 1995, at which time Lauren also filed with the magistrate a motion to compel. The magistrate granted that motion. One month later, Lauren served Century with a request for entry upon land for inspection of the hardware.

However, unbeknown to Lauren, Century had destroyed the hardware in question in December 1994. Notably, the employees involved in the destruction, including a managerial employee and a director and officer, admitted having knowledge of the significance of the hardware as crucial evidence at the time it was destroyed. Century gave no indication to Lauren that the computers no longer existed until late May 1995.

Under these circumstances, we conclude that the trial court did not abuse its discretion in finding that Century had destroyed evidence in bad faith and in awarding attorney fees and costs as part of the sanction for such destruction. *See Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672, 677 (Colo. 1987) ("Bad faith ... connotes conduct which, although not necessarily deliberate or intentional, nonetheless amounts to a flagrant disregard or dereliction of one's discovery obligations.").

The judgment and order are affirmed.

PLANK, J., concurs.

METZGER, J., specially concurs.

Judge METZGER specially concurring.

I concur in the result reached by the majority. However, since the trial court's award of attorney fees against Century as a sanction for its destruction of evidence was mandated, in my view, by § 13–17–102, C.R.S.1997, I do not believe the majority's reliance on the doctrine of inherent power is necessary.

A trial court "shall assess attorney fees" if it finds that a party "defended an action, or any part thereof, that lacked substantial justification" or "unnecessarily expanded the proceeding by ... improper conduct." The statute equates "lacked substantial justification" to "substantially vexatious." Section 13–17–102(4), C.R.S.1997.

In *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984), our supreme court observed:

> Certainly, if the record reveals that counsel or any party has brought, maintained, or defended an action in bad faith, the rationale for awarding attorney fees is even stronger. Bad faith may include conduct which is arbitrary, vexatious, abusive, or stubbornly litigious. It may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy.

Clearly, destruction of evidence which is the subject of the litigation in "bad faith," as the trial court specifically found had occurred here, is "disrespectful of truth and accuracy."

Consequently, in my view, the trial court was compelled by the language of § 13–17–102(4) to award attorney fees against Century, regardless of the import of its inherent power, and I would affirm its decision on that basis.