**Robert A. PFANTZ and Mid–Century Insurance Company, Plaintiffs–Appellees,**

**v.**

**KMART CORPORATION, a Michigan corporation, Defendant–Appellant,**

**and**

**Waymar Industries, Inc., a Minnesota corporation, Defendant–Appellee.**

No. 01CA0388.

Colorado Court of Appeals, Div. II.

July 31, 2003.

Rehearing Denied Oct. 9, 2003.

Certiorari Granted March 15, 2004.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Wick Campbell Bramer Ukasick & Trautwein, L.L.C., Troy A. Ukasick, Kimberly B. Schutt, Fort Collins, Colorado, for Plaintiff–Appellee Robert A. Pfantz.

Campbell, Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, Colorado, for Plaintiff–Appellee Mid–Century Insurance Company.

Godin & Baity, L.L.C., Mari K. Perczak, Leigh M. Monette, Denver, Colorado, for Defendant–Appellant.

Overturf & McGath, P.C., Thomas E. Hames, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge WEBB.

Defendant, Kmart Corporation, appeals the judgment entered against it on a jury verdict in favor of plaintiffs, Robert Pfantz and Mid–Century Insurance Company (insurer). Pfantz was injured in a Kmart store when he sat down on a bench that had been manufactured by codefendant Waymar Industries, Inc. Kmart contends that the trial court erred in imposing sanctions against it for destruction of the bench, after commencement of this action but before trial, and in denying its motion for judgment notwithstanding the verdict regarding future medical expenses. We affirm.

As relevant here, Pfantz and insurer, as subrogee for Pfantz's medical expenses, sued Kmart and Waymar on theories of products liability and negligence. Although shortly after the accident counsel for Pfantz notified Kmart that the bench should be preserved as evidence, it remained in use for over two years. During that time, Pfantz's expert examined the bench, videotaped it, and prepared a report finding both defendants blameworthy. Waymar's attorney and a company representative also saw the bench while it remained in use.

After removing the bench from use, the store manager placed it in a storage trailer behind the store to preserve it for litigation. Shortly thereafter, however, Kmart could not locate the bench. Approximately three months later, store employees who did not know of the litigation came across the bench, disassembled it, and put it into a dumpster. A new store manager learned that the bench had been located and intervened, but upon removal from the dumpster the bench was found to be substantially destroyed.

Waymar's testimonial expert examined the bench only after its removal from the dumpster and concluded that the effect of Kmart's pre-accident repairs to and modifications of the bench could no longer be determined. Although the bench had never been the subject of a discovery order, Waymar then sought sanctions against Kmart for spoliation of evidence. Pfantz joined in the motion.

Without conducting a hearing, in a pretrial order the trial court found that, "Kmart's actions in this case were either intentional or so reckless that it must be held accountable," but made no specific finding that Kmart had willfully destroyed the bench. The court also described Kmart's recklessness as "bad faith." It imposed sanctions for spoliation, including ruling that the jury would be instructed, "the bench is presumed to be defective, and Kmart is presumed to be the cause of the defective condition."

After having been so instructed, the jury found Kmart 100% negligent and awarded damages to Pfantz and insurer, including $30,000 to Pfantz for future medical expenses. Kmart unsuccessfully moved for judgment notwithstanding the verdict as to the future medical expense award.

I.

Kmart first contends that the trial court erred in imposing the jury instructions as sanctions against it because a punitive sanction requires intentional spoliation, but the trial court found only that Kmart acted recklessly. Kmart further contends that the record does not support the finding of recklessness; that the sanctions exceeded action necessary to remediate harm to the other parties; and the trial court did not hold a hearing on the sanctions motion. We discern no error.

■ Appellate courts will not overturn a trial court's imposition of an adverse inference unless the sanction constitutes an abuse of discretion or is manifestly arbitrary, unreasonable, or unfair. *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200 (Colo. App.1998).

■ Trial courts enjoy broad discretion to impose sanctions for spoliation of evidence, even if the evidence was not subject to a discovery order permitting sanctions under C.R.C.P. 37. *See Lauren Corp. v. Century Geophysical Corp., supra* (citing *Pena v. Dist. Court,* 681 P.2d 953, 956 (Colo.1984)).

■ In the exercise of inherent power, trial courts may impose sanctions both to punish a party that has spoiled evidence and to remediate the harm to the injured party from absence of that evidence. *Rodriguez v. Schutt,* 896 P.2d 881 (Colo.App.1994), *aff'd in part and rev'd in part on other grounds,* 914 P.2d 921 (Colo.1996).

In *Rodriguez v. Schutt, supra,* the division concluded that the party deprived of the evidence was not entitled to an "adverse inference" jury instruction. In *Lauren Corp. v. Century Geophysical Corp., supra,* the division upheld a presumption that software had been used other than as permitted in a licensing agreement.

Here, the trial court's order discusses the propriety of permitting the jury to draw the inference that the evidence would have been adverse to the destroyer, citing *In re*

*Holmes' Estate,* 98 Colo. 360, 56 P.2d 1333 (1936). However, the court framed the instructions as presumptions rather than inferences.

The parties do not argue, and we express no opinion on, any difference between a presumption and an inference as either a punitive or a remedial sanction.

### A.

We first reject Kmart's contention that, as a matter of law, a court can exercise its inherent power to impose a punitive sanction only for the intentional spoliation of evidence.

A court has inherent power to impose a punitive sanction when a party intentionally destroys evidence. *See Rodriguez v. Schutt, supra; People v. Dist. Court,* 200 Colo. 65, 612 P.2d 87 (1980)(defining "intentional" in this context as destruction to prevent use as evidence), *disapproved in part by Schaffer v. Dist. Court,* 719 P.2d 1088, 1090 n. 1 (Colo. 1986).

In *Rodriguez,* however, the destruction of evidence resulted from simple negligence and the trial court imposed no sanction. No Colorado case has addressed whether the inherent power to impose punitive sanctions extends to spoliation that is more serious than negligence, but less serious than willful or intentional. Nevertheless, we are persuaded by Colorado cases involving discovery violations, as well as by more recent federal precedent, that conduct between negligent and intentional which results in spoliation of evidence may warrant a punitive sanction as a discretionary exercise of inherent power.

As a discovery sanction under C.R.C.P. 37, courts may impose the ultimate penalty of a default judgment where a party has: willfully or deliberately disobeyed a discovery rule; engaged in bad faith conduct that is a flagrant disregard or dereliction of discovery obligations; or engaged in culpable conduct which is more than mere inadvertence or simple negligence, but is gross negligence. *See Newell v. Engel,* 899 P.2d 273 (Colo.App.1994). "Bad faith" includes "conduct which, although not necessarily deliberate or intentional, nonetheless amounts to a flagrant disregard or dereliction of one's discovery obligations." *Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672, 677 (Colo.1987).

In *Newell,* the court entered a default judgment under C.R.C.P. 37 for behavior that was in bad faith or grossly negligent. Although in *Newell* the court addressed bad faith separately from willfulness and gross negligence, for purposes of inherent power to impose sanctions we discern no useful distinction among bad faith, recklessness, and gross negligence. All these terms describe conduct that is more than negligent and less than intentional. *See EEOC v. Jacksonville Shipyards, Inc.,* 690 F.Supp. 995 (M.D.Fla.1988)(courts look to Fed.R.Civ.P. 37 as a guide in the exercise of their inherent powers). Bad faith is the standard used to determine that a party who has destroyed evidence is precluded from using secondary evidence. CRE 1004(1).

In our view, extending the inherent power to impose sanctions to recklessness and gross negligence furthers the objective of deterring serious misconduct, *see Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 167 F.R.D. 90 (D.Colo.1996). The sanction should be "commensurate with the seriousness of the disobedient party's conduct." *Newell v. Engel, supra,* 899 P.2d at 276. Conduct that is grossly negligent or reckless "is so aggravated as to be all but intentional," *White v. Hansen,* 837 P.2d 1229, 1233 (Colo. 1992), and therefore should be deterred.

The division in *Rodriguez v. Schutt, supra,* considered the majority view to be that punitive sanctions could be imposed only for intentional destruction of evidence. However, more recent cases have permitted punitive sanctions where the misconduct is more than mere negligence. In *Reilly v. NatWest Mkts. Group, Inc.,* 181 F.3d 253, 267–68 (2d Cir.1999), for example, the court held that imposition of an adverse inference based on the spoiler's gross negligence was not an abuse of discretion. *See also Aramburu v. Boeing Co.,* 112 F.3d 1398 (10th Cir.1997).

Accordingly, we conclude that inherent power to impose a punitive sanction is

not limited to intentional spoliation of evidence.

### B.

We next reject Kmart's contention that the record does not support the trial court's finding of recklessness.

Here, the trial court allowed discovery concerning circumstances of the spoliation and received extensive briefing, which included an affidavit from Kmart's store manager at the time of the accident. After discussions with counsel, this manager removed the bench from use and placed it in a storage trailer, recognizing that it presented a possible danger to the public. His affidavit stated that "the entire management team at Kmart knew that this bench needed to be preserved as evidence for this lawsuit."

However, the record does not indicate that Kmart took any steps to mark the bench as needing preservation or that Kmart stored the bench in a location accessible only to the "management team." Nor does the record explain why the store director, who joined the store after the accident and later ordered the bench disposed of, had not been informed of the need to preserve it. Thus, the record supports the trial court's finding that Kmart had engaged in reckless behavior by its "shocking lack of care in preserving potentially adverse evidence that was in its sole possession and control."

Accordingly, we will not disturb the finding of recklessness.

### C.

Because the trial court's order also explained the jury instructions on remedial grounds, we address Kmart's contention that the instructions exceeded any necessary remedial measures. We conclude that the instructions were within the trial court's discretion on this basis.

If the spoiling party is merely negligent, an adverse inference nevertheless may be imposed to remediate harm when the inference is "reasonably likely to have been contained in the destroyed evidence." *Rodriguez v. Schutt, supra,* 896 P.2d at 884

(quoting *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 77 (S.D.N.Y.1991)).

Here, Kmart's manager acknowledged that the bench was removed from use because it represented a possible danger to the public. This admission supports the trial court's conclusion that had the bench survived, it would have been unfavorable to Kmart. Nevertheless, Kmart argues that the instructions were not necessary to remediate the resulting harm. We examine separately the harm to Waymar, the harm to Pfantz, and the relationship of the instructions to that harm.

### 1.

The trial court found that the bench's "evidentiary value was substantially destroyed." The report of Pfantz's expert stated that the injury resulted from Waymar's design of the bench as well as from repairs and modifications by Kmart. In contrast, Waymar's trial expert concluded, "Due to the disassembled state and missing parts related to the current condition of the bench, I cannot at this time complete an analysis of the injury potential related to this incident." Thus, Waymar's defense that the bench was designed correctly, but failed only because of modifications and repairs by Kmart, could not be supported with expert testimony.

Accordingly, we do not perceive that the trial court abused its discretion in imposing the instruction that Kmart was the cause of the defective condition, as a remedial measure assisting Waymar.

### 2.

In attacking the instruction that the bench was presumed to be defective, which assisted Pfantz but not Waymar, Kmart correctly notes that Pfantz's expert thoroughly inspected the bench before its destruction and prepared a report. Nevertheless, we conclude that this instruction was also within the trial court's discretion.

Pfantz's expert theorized that, as Pfantz sat down, the seat back deflected, exposing the upturned lip of the seat bottom which then impacted his tail bone, resulting in the injuries at issue. The expert's report explained that only 1/2 to 5/8 of an inch of the

upturned seat bottom was exposed. When joining in Waymar's motion for sanctions, Pfantz explained he had intended to use the bench to show the jury how it posed a safety hazard.

■ Whether an object or condition is hazardous raises a fact question for the jury. *See Millenson v. Dep't of Highways,* 41 Colo. App. 460, 462, 590 P.2d 979, 981 (1978). "If a material issue in the case is whether an object does or does not possess a perceptible feature, characteristic, or quality, the most satisfactory method of demonstrating the truth of the matter will ordinarily be to produce the object so that the trier of fact may perceive the quality, or its absence, for himself." 8 *McCormick on Evidence* § 212 (John W. Strong ed., 1999).

Here, the expert evidence alone may not have been sufficient to persuade the jury that this limited exposure caused injuries of the magnitude Pfantz claimed. If the jurors could have examined the bench and seen how far the seat back deflected and the actual circumstances under which deflection occurred, these observations might have assisted it in determining that the bench was a hazard. Hence, the photographs and videotapes taken by Pfantz's expert would not necessarily be a satisfactory substitute for use of the bench as physical evidence at trial.

Accordingly, we also perceive no abuse of discretion in the instruction that the bench was defective as a remedial measure to assist Pfantz.

### D.

■ We also reject Kmart's assertion that the trial court erred in not holding a hearing on the sanctions motion.

C.R.C.P. 121, § 1–15 does not require that hearings be held on motions, and Kmart cites no case authority requiring a hearing prior to the imposition of sanctions for spoliation of evidence. In this context, due process requires only notice and an opportunity to respond, both of which Kmart received. *See Raymond Lloyd Co. v. Dist. Court,* 732 P.2d 612 (Colo.1987).

Moreover, all parties filed a stipulation seeking a forthwith ruling and requesting a hearing only if deemed "reasonable and necessary" by the trial court. In its motion to reconsider the sanctions order, Kmart did not protest that the trial court had ruled without a hearing.

Accordingly, we perceive no abuse of the court's discretion in entering the sanctions without a hearing.

### II.

■ Kmart next asserts that the trial court erred in denying its C.R.C.P. 59(e) motion for judgment notwithstanding the verdict because the $30,000 award for future medical expenses was not supported by sufficient evidence. We disagree.

A judgment notwithstanding the verdict may be entered only if, when viewing the evidence in the light most favorable to the party against whom the motion is directed, reasonable persons could not reach the same conclusion as the jury. *Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544, 552 (Colo. 1988). Every reasonable inference that may be drawn from the evidence must be drawn in favor of the nonmoving party. *Klein v. State Farm Mut. Auto. Ins. Co.,* 948 P.2d 43, 47 (Colo.App.1997).

■ "The amount of damages awarded may be an approximation, provided that the fact of damages is certain and provided the plaintiff introduces some evidence that is sufficient to permit a reasonable estimation of damages." *Dupont v. Preston,* 9 P.3d 1193, 1199 (Colo.App.2000), *aff'd,* 35 P.3d 433 (Colo.2001). Where the fact of damage has been proved, the amount of damages is generally within the province of the jury. *Dupont v. Preston, supra.*

■ An injured person's history of medical treatment for the injury at issue may support an award of future medical expenses. *See CeBuzz, Inc. v. Sniderman,* 171 Colo. 246, 255, 466 P.2d 457, 461 (Colo.1970). The need for future surgery need not be established where a plaintiff is incurring other medical expenses, such as therapy and medications, or suffers from reduced movement as a result of the injury. *Martin v. Porak,* 638 P.2d 853, 855 (Colo.App.1981); *Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424, 428 (Colo.App.1985).

Here, the jury heard significant and sometimes uncontroverted testimony about the extent of Pfantz's injuries, past surgeries, reduction in motion, ongoing therapy, and lingering symptoms.

Nevertheless, Kmart attacks the testimony of Pfantz's physician, expressed with a reasonable degree of medical certainty, that Pfantz faced a twenty to twenty-five percent chance of requiring additional surgery. According to Kmart, these percentages amount to no more than speculation and conjecture. We are not persuaded that the future medical expense award depends on this testimony.

Kmart assumes that the future medical expense award depended solely on this testimony. However, the jury also heard testimony of Pfantz's entire medical history, which supports an award of future medical expenses. On this record, we cannot conclude that the amount awarded by the jury is "grossly and manifestly excessive or is the result of passion and prejudice." *See Zertuche, supra,* 706 P.2d at 428.

Accordingly, we perceive no error in the trial court's refusal to reduce this award.

The judgment is affirmed.

Judge NEY and Judge PIERCE * concur.