24CA0463, 24CA0995 & 24CA1400 MG Dyess v MarkWest 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals Nos. 24CA0463, 24CA0995 & 24CA1400
City and County of Denver District Court No. 23CV30585
Honorable Mark T. Bailey, Judge

---

M.G. Dyess, Inc., and M.G. Dyess LLC,

Plaintiffs-Appellees,

v.

MarkWest Liberty Midstream & Resources, L.L.C.,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Harris and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Wheeler Trigg O'Donnell LLP, Meghan Frei Berglind, Denver, Colorado;
Kilpatrick Townsend & Stockton LLP, Adam H. Charnes, Dallas, Texas;
Kilpatrick Townsend & Stockton LLP, R. Lee Mann III, Atlanta, Georgia, for
Plaintiff-Appellee

Snell & Wilmer L.L.P., James D. Kilroy, Ellie Lockwood, Denver, Colorado, for
Defendant-Appellant

¶ 1     Defendant, MarkWest Liberty Midstream & Resources, L.L.C. (MarkWest), appeals the district court's judgment entered in favor of plaintiffs, M.G. Dyess, Inc. and its successor-in-interest M.G. Dyess LLC (collectively, Dyess), on their breach of contract claim. MarkWest contends that the district court erred by excluding certain evidence and giving an adverse inference jury instruction at trial.  We affirm.

## I.     Background

¶ 2     In August 2017 Dyess contracted with MarkWest to build three lengths, or "spreads," of natural gas pipelines, spreads 1A, 1B, and 2, in West Virginia (the contracts).  Relevant for this appeal, each contract specified that in exchange for building each spread, MarkWest would pay Dyess allocated portions of a lump sum once Dyess reached "satisfactory completion of a payment milestone," including 30% of the lump sum once Dyess reached "Mobilization," 40% at "Work Welded Out," and the remaining 30% at "Mechanical Completion."

¶ 3     However, MarkWest could withhold 10% of the lump sum (retainage), which would then be due "within forty five (45) days after Project Completion and Work Acceptance."  "Work Acceptance"

1

was defined as when Dyess "submitted a Notice of Project Completion," and MarkWest accepted it, in writing, agreeing that the work was complete. If MarkWest believed the work was not complete, it had to issue a "Completion Rework Notice" to Dyess advising "in writing of any deficiencies or defects in the Work" for Dyess to remedy and achieve Work Acceptance. MarkWest agreed to pay $41,249,100.45 for Dyess's work under all three of the contracts; 10% of this in retainage amounted to $4,124,910.05.

¶ 4 Each contract specified that if Dyess failed "to achieve Mechanical Completion by the Mechanical Completion Date," it would pay MarkWest liquidated damages, to a maximum of $4,500,000 (the late completion payments). If Dyess did not make the required late completion payments, MarkWest had "the right to offset such Late Completion Payments against any payments still due under this Contract including but not limited to the final payment and Retainage."

¶ 5 Conflict arose between the parties as the project progressed, however. In 2018 Dyess sued MarkWest, and MarkWest asserted counterclaims in *M.G. Dyess, Inc. v. MarkWest Liberty Midstream & Res., L.L.C.*, No. 18CV34745 (City & Cnty. of Denver Dist. Ct.)

(*Dyess I*).  On February 14, 2020, a jury awarded Dyess

$26,039,641 in quantum meruit damages for an unjust enrichment

claim, awarded MarkWest $4,500,000 in late completion payments

pursuant to MarkWest's breach of contract counterclaim, and

rejected the parties' other claims.  *M.G. Dyess, Inc. v. MarkWest

Liberty Midstream & Res., L.L.C.*, 2022 COA 108, ¶ 6.  The district

court in *Dyess I* determined that the quantum meruit claim was an

equitable claim, accepted the jury's verdict as advisory only, and

reduced Dyess's damages to $934,436.  *Id.* at ¶ 8.  The district

court entered judgment on July 8, 2020.

¶ 6      A division of this court later reversed the *Dyess I* district

court's decision to treat the jury verdict as advisory, concluding

that the quantum meruit claim was legal and not equitable.  *Id.* at

¶¶ 19-21.  The division remanded the case to reinstate the award

subject to the parties' posttrial motions and to award both parties

pre- and post-judgment interest.  *Id.* at ¶¶ 24, 37-38.

¶ 7      Because the division had affirmed the jury's quantum meruit

liability finding, the *Dyess I* remand court simply offset MarkWest's

$4,500,000 breach of contract judgment from Dyess's $26,039,641

quantum meruit judgment, arriving at a net award of $21,539,641

3

(plus pre- and post-judgment interest) in favor of Dyess. The new judgment was entered on December 27, 2023. MarkWest challenged the remand court's decision in a separate appeal, and another division of this court affirmed the judgment as entered by the remand court. *M.G. Dyess v. MarkWest Liberty Midstream & Res., LLC*, slip op. at ¶¶ 12, 58 (Colo. App. No. 24CA0585, May 22, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 8 While the *Dyess I* case was progressing, however, Dyess and MarkWest began disputing whether MarkWest had to pay Dyess the retainage, which led to a second case and this appeal. On January 20, 2020, shortly before trial commenced in *Dyess I*, Dyess sent project completion notices for all three spreads and requested payment. Dyess requested $4,081,182.83 in retainage (accounting for a $43,727.22 partial payment MarkWest had made to Dyess).

¶ 9 On February 19, 2020, MarkWest responded by sending a "Nonacceptance of Projection Completion and Completion Rework Notice" (the nonacceptance notice). According to MarkWest, Dyess had "not performed all Services required under the Contracts nor ha[d] it fulfilled its outstanding obligations under the Contracts to MarkWest's satisfaction." MarkWest specifically contended that

4

Dyess failed to "complete restoration of Number 2 Ridge Road" (the Ridge Road restoration work), despite requests to do so, and failed to compensate MarkWest for the cost of hiring another contractor to complete this work. MarkWest also alleged that Dyess still owed $4,500,000 in late completion payments and had submitted insufficiently detailed project completion notices. As a result, MarkWest refused to pay Dyess the retainage.

¶ 10 Dyess sued MarkWest on February 23, 2023, asserting a breach of contract claim based on MarkWest's failure to pay the retainage. *M.G. Dyess, Inc. v. MarkWest Liberty Midstream & Res., L.L.C.*, No. 23CV30585 (City & Cnty. of Denver Dist. Ct.) (*Dyess II*). MarkWest asserted several affirmative defenses and a counterclaim for breach of contract. As relevant here, MarkWest alleged that Dyess's request for retainage was barred by the contracts, which allowed MarkWest to offset late completion payments against the retainage. On November 16, 2023, after a four-day trial, the jury awarded Dyess $4,451,182.84 in damages (several hundred thousand dollars more than Dyess's demand).

¶ 11 On December 7, 2023, MarkWest moved pursuant to C.R.C.P. 59 for a new trial or, alternatively, remittitur. The district court

declined the request for a new trial but agreed to reduce the jury's award to $4,081,182.83, the amount of Dyess's demand. The court's February 7, 2024, judgment awarded Dyess $4,081,182.83 in damages with $1,441,924.06 in prejudgment interest, for a total of $5,523,106.89.[1] This appeal followed.

## II. Issues on Appeal

¶ 12 MarkWest raises two issues on appeal. First, MarkWest argues that the district court erred by excluding evidence that as of February 2020, when MarkWest issued the nonacceptance notice, Dyess owed $4,500,000 in late completion payments, which meant it was in breach of the contracts. Second, MarkWest argues that the district court erred by instructing the jury that it could presume that spoliated evidence was adverse to MarkWest.

¶ 13 MarkWest posits that both errors require a new trial. We conclude that the district court did not err in either instance, so we affirm the district court.

---

[1] The district court also later awarded Dyess attorney fees and costs after finding that "MarkWest made claims and defenses in this action that lacked substantial justification under [section 13-17-102, C.R.S. 2024]."

A.    Evidence of the Jury's Determination in *Dyess I*

1.    Additional Background

¶ 14    Before trial in *Dyess II*, Dyess filed a motion in limine to exclude any evidence of the *Dyess I* verdict awarding MarkWest $4,500,000 in late completion payments.  The *Dyess I* remand court had not yet entered its December 27, 2023, judgment awarding Dyess the netted quantum meruit damages, but MarkWest's late completion payment award was not in dispute.

¶ 15    Dyess argued that MarkWest was effectively seeking a double recovery by trying to deny Dyess's claim for the retained funds based on the late completion payments in *Dyess II* while also using this award to reduce Dyess's quantum meruit damages in *Dyess I*. Dyess contended that the issues in *Dyess I* had no bearing on the retainage issue in *Dyess II* and would be irrelevant and prejudicial. Instead, the only issue the jury had to decide was whether MarkWest was entitled to any retainage reduction because of the Ridge Road restoration work that MarkWest alleged Dyess failed to complete.

¶ 16    Dyess further argued that once judgment in *Dyess I* was entered, MarkWest was precluded under the doctrine of merger

from bringing a counterclaim on the grounds that the late completion payments offset the retainage. Dyess thus requested that any issue related to the *Dyess I* judgment be handled by the court after trial.

¶ 17    MarkWest responded that it was seeking to use the *Dyess I* judgment only to offset any retainage judgment. It explicitly agreed that its "declaratory judgment claim and its affirmative defense of offset or set-off should be decided by the Court and not the jury" to avoid confusing the jury. MarkWest also reiterated that it did not "dispute that its original claim for contract damages 'merged into' a $4,500,000 judgment" and that it was not seeking to relitigate the issue.

¶ 18    Notably, before MarkWest responded to Dyess's motion in limine, MarkWest also moved to preclude any evidence of Dyess's quantum meruit judgment and extracontractual work Dyess performed, arguing it would be confusing and prejudicial.

¶ 19    Dyess argued that a jury instruction should be tendered explaining that there was prior litigation between the parties but that the jury's verdicts in *Dyess I* were irrelevant. It also argued that it would be improper to inform the jury of the late completion

payments award but not the quantum meruit award. But Dyess opposed the request to exclude all evidence of extracontractual work Dyess performed because evidence relating to the Ridge Road restoration work was disputed in *Dyess II*.

¶ 20 The court ruled on both motions in limine, finding that the jury verdicts in *Dyess I* had "little if any relevance," and any marginal relevance would be "substantially outweighed" by risks of prejudice, confusion, or misleading the jury. The court agreed that any question of whether to offset the retainage award with the late completion payments judgment would be addressed after trial. Finally, evidence of extracontractual work related to the quantum meruit claim in *Dyess I* would be tentatively admissible, subject to contemporaneous objections and the limitation that evidence or discussion of the *Dyess I* jury's verdicts was inadmissible.[2]

¶ 21 MarkWest and Dyess later submitted a joint stipulation before trial. The parties agreed that the late completion payments offset

---

[2] After trial, the *Dyess II* court declined to use the $4,500,000 judgment to offset any of Dyess's retainage damages because once the *Dyess I* remand court used this judgment to offset Dyess's quantum meruit damages, the judgment was not available to offset the retainage damages.

9

issue would be decided by the court after trial and agreed that the court would tender the following jury instruction:

> There has been a prior jury trial between these same parties involving this same construction project. That case is pending before another Judge in this courthouse and there are post-trial motions to still decide in that first case. I instruct you, as a juror in this case, as follows regarding the prior case between these parties:
>
> a) the monetary claims in the prior jury trial are not before you;
>
> b) the recovery, if any, by either party to the prior jury trial is not before you;
>
> c) you should address and issue your decision solely on the claims at issue in this action;
>
> d) You are not to perform any investigation or research on the Internet or in any other way, or take any other actions of any type to learn about the prior action or the outcome of it.

The parties also agreed "not to introduce evidence or make arguments inconsistent with this instruction." The court accepted the joint stipulation, and the instruction was read to the jury at the start of trial. It was also included in the written jury instructions.

¶ 22   At trial, the late completion payments issue arose during MarkWest's counsel's cross-examination of Marshall Grant Dyess, Dyess's president. MarkWest's counsel was inquiring about the

10

retainage and "project completion" portions of the contracts and asked Mr. Dyess to confirm that to receive retainage Dyess had to comply with all other contractual obligations, which Mr. Dyess confirmed was correct. MarkWest's counsel then began to ask, "So let's look at one of the obligations in the contract. On Page 5, . . . late completion payments." Dyess's counsel asked to approach the bench before Mr. Dyess could answer.

¶ 23 Dyess's counsel argued that MarkWest was attempting to introduce evidence of the late completion payments, but MarkWest no longer had a claim on these grounds after the judgment in *Dyess I* merged with MarkWest's contractual right. MarkWest's counsel argued the questioning had "nothing to do with" offsetting damages and the court's motion in limine rulings on this point; instead, counsel was seeking to explain that the late completion payments were a "condition precedent" to retainage under the contracts. MarkWest's counsel contended that it was therefore proper to explain that MarkWest's refusal to pay retainage was based on the missing late completion payments and that "as a matter of fact, a jury decided that [Dyess] [was] liable for those late payments." MarkWest's counsel added that "maybe we should have brought it

up earlier, but it's undisputed that there is a finding that they breached the late payment provision, and that is our whole case."

¶ 24   Because it was late in the afternoon, the court dismissed the jury and agreed to hear the issue further the next day.  The next day, Dyess's counsel argued that MarkWest had never raised a specific condition precedent argument in the pleadings in violation of C.R.C.P. 9(c), and MarkWest could not raise the issue for the first time during trial.  Dyess also reiterated that after the judgment in *Dyess I* there was no reason to discuss the late completion payments with the jury now that the judgment had merged with and extinguished any late payment contract claim.  Dyess added that Michael Hoy, a "designated corporate representative for MarkWest," testified in a deposition that the only reason for failing to pay the retainage was Dyess's alleged "[f]ailure to complete the required scope of work as detailed in the original contract and scope of work."

¶ 25   MarkWest responded that C.R.C.P. 9(c) did not bar MarkWest's condition precedent argument and that it was necessary to explain why MarkWest refused to pay the retainage by referencing the late completion payments — and that "as a matter

12

of fact, it has been determined that there was a breach" of the contracts in *Dyess I*. The court responded by asking, "So then are we going to give [Dyess] . . . a chance to talk about all the money that Dyess thought they were owed by MarkWest, and then that's why they didn't pay?" MarkWest's counsel argued this would be irrelevant because Dyess's quantum meruit claim was irrelevant to *Dyess II*.

¶ 26     After a recess, the court denied Dyess's request to completely exclude discussion of the late completion payments, finding that "this was central to what the parties were talking about during the time of the alleged breach," and declined to redact exhibits that mentioned the late completion payments. But the court also maintained that "neither party will be permitted to refer [to] or offer evidence about the jury verdicts; i.e., who won and the amount of damages in the prior case." Dyess's counsel reiterated its objection, and MarkWest's counsel asked to make an offer of proof later in the afternoon.

¶ 27     When Mr. Dyess's cross-examination resumed, MarkWest's counsel asked about the late completion payments. Mr. Dyess agreed that Dyess could be forced to pay up to $4,500,000 if it

failed to achieve timely mechanical completion for all three spreads, and he confirmed that mechanical completion occurred after the contracts' specified deadlines. Mr. Dyess also acknowledged that the contracts allowed MarkWest to offset late completion payments against any retainage owed and that "[n]o checks were written" to make any late completion payments. On redirect, Dyess's counsel elicited testimony from Mr. Dyess that he believed MarkWest had granted an extension for mechanical completion and that Dyess had completed the spreads by this extended deadline. MarkWest's counsel did not object to these questions.

¶ 28 MarkWest's counsel made the offer of proof later in the afternoon, explaining that he would have elicited testimony showing that (1) the *Dyess I* lawsuit began in December 2018, and the *Dyess II* lawsuit began after Dyess submitted its project completion notices in January 2020; (2) "during the trial of [*Dyess I*], the jury issued a verdict finding that MarkWest did not breach the contract on any level" but that "Dyess did breach the contract, and particularly [the section] dealing with failure to make late completion payments," and that the verdict was affirmed on appeal; and (3) Dyess obtained a quantum meruit verdict after MarkWest's nonacceptance notice.

¶ 29    MarkWest's counsel added that Mr. Dyess's redirect testimony that Dyess had met the extended mechanical completion deadline had "opened the door" to its proposed inquiry. MarkWest's counsel said it was now necessary to explain to the jury that the extension argument and Dyess's breach of contract claim were rejected in *Dyess I.*

¶ 30    Dyess's counsel then responded that Dyess had not opened the door. MarkWest sought to introduce exhibits and testimony about the late completion payments and the *Dyess I* verdict without allowing Dyess to explain its position on the matter.

¶ 31    The court noted that it was concerned that MarkWest had violated C.R.C.P. 9(c) by failing to plead what appeared to be its new "condition precedent" defense: that Dyess's failure to make the late completion payments relieved MarkWest of its obligation to pay the retainage. After reviewing deposition testimony, interrogatories, and MarkWest's answer, the court found that "MarkWest did not plead this matter specifically and with particularity," and it did not allow the theory to go to the jury.

¶ 32    The court also denied MarkWest's defense on the merits. The court reasoned that after MarkWest's $4,500,000 breach of contract

judgment in *Dyess I* was entered, Dyess no longer had a contractual obligation to make the late completion payments because they had merged with MarkWest's judgment in *Dyess I*.

### 2. Analysis

¶ 33 MarkWest argues that the district court abused its discretion by excluding evidence of the facts underlying the jury's verdict in *Dyess I*. MarkWest contends that its primary defense against Dyess's claim for retainage was that, at the time it sent the notice of nonacceptance in February 2020, Dyess was in breach of the contracts based on its failure to make the late completion payments. It acknowledges that Dyess's contractual obligation regarding the late completion payments no longer existed once judgment entered in *Dyess I*, but it points out that judgment had not entered as of February 2020.

¶ 34 MarkWest argues it was prevented from telling the jury about this evidence even after Dyess opened the door, thereby misleading the jury into thinking that Dyess had met its contractual obligations. It argues that if the jury had heard this evidence, it "very well may have concluded that Dyess was not owed anything."

¶ 35   Dyess counters that the court did not err.  It says that MarkWest waived this argument and, even if it did not, the court properly excluded the evidence because the court (1) acted consistently with the joint stipulation; (2) correctly found that MarkWest failed to sufficiently plead the matter in accordance with C.R.C.P. 9(c); and (3) properly rejected the defense on the merits because once the judgment in *Dyess I* was entered Dyess no longer had any contractual obligation to pay the late completion damages. Finally, Dyess argues that even if an error occurred it was harmless.

¶ 36   As we explain below, the court did not err.

a.   Standard of Review and Applicable Law

¶ 37   MarkWest preserved this issue for appeal through its offers of proof, numerous discussions with the district court, and objections. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25.

¶ 38   "In general, all relevant evidence is admissible, and the Colorado Rules of Evidence strongly favor admission of material evidence."  *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (citations omitted).  But a district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

¶ 39     "[T]rial courts have broad discretion to determine the admissibility of evidence," *CORE Elec. Coop. v. Freund Invs., LLC*, 2022 COA 63, ¶ 28, so we review "evidentiary rulings for abuse of discretion," *Ronquillo v. EcoClean Home Servs., Inc.*, 2021 CO 82, ¶ 12. "A district court abuses its discretion when its decision is 'manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law.'" *Gebert*, ¶ 29 (citation omitted).

### b.     Application

¶ 40     The district court did not abuse its discretion when it refused to allow the jury to hear MarkWest's evidence relating to the late completion payments. True, MarkWest's answer alleged that MarkWest could offset the late completion payments against a retainage award and, generically, that "Dyess failed to satisfy conditions precedent under the contracts." But both parties agreed the offset argument would be addressed by the court *after* trial.

18

¶ 41     Despite its contentions otherwise, MarkWest — not Dyess —

opened the door to the testimony it now contends it needed to

respond to.  During Mr. Dyess's cross-examination, MarkWest's

counsel brought up the issue of the late completion payments and

their connection to retainage.  In response to MarkWest's allegation

that it did not have to pay retainage because Dyess breached the

contract, Dyess argued that, at the time, it believed the deadline

had been extended.  *See Itin v. Ungar*, 17 P.3d 129, 132 n.4 (Colo.

2000) ("'[O]pening the door' . . . often occurs when one party

introduces evidence that causes another party to introduce

counterproof that would otherwise be inadmissible but for the first

party's introduction of the subject matter.").  MarkWest cannot

complain that Dyess was able to elicit this limited testimony when

MarkWest first raised the issue.

¶ 42     MarkWest insists that the *Dyess II* jury needed to hear that

the *Dyess I* jury found that Dyess breached the contract.  But

MarkWest conceded at trial, and here on appeal, that once

MarkWest obtained its breach of contract judgment for the late

completion payments in *Dyess I*, any contractual right it may have

been able to maintain based on the late completion payments

19

merged into this judgment. *See* Restatement (Second) of Judgments § 18(1) (Am. L. Inst. 1982) ("When a valid and final personal judgment is rendered in favor of the plaintiff: (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof . . . ."); *see also id.* § 18 cmt. a (Under the doctrine of merger, "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment."); *id.* § 21(1); *id.* § 21 cmt. a ("A defendant who interposes a counterclaim is, in substance, a plaintiff as far as the counterclaim is concerned."); *cf. Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1185 (Colo. 2003) ("When a creditor elects to sue on a promissory note after a debtor defaults and the creditor obtains a judgment, the note loses its identity and merges into the judgment.").

¶ 43    Because Dyess's obligation to pay late completion payments merged into MarkWest's breach of contract judgment, whether Dyess breached the contract in this respect became irrelevant for the *Dyess II* jury. We understand MarkWest's argument that it originally refused to pay the retainage because of the unpaid late

completion payments, but at the time of trial in *Dyess II* this was no longer a valid basis for refusing to pay the retainage.  And because the jury could no longer use this theory as a basis to find that MarkWest could refuse to pay retainage, it had no reason to hear evidence on this argument.  *See* Restatement (Second) of Judgments § 18(1); *see also Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 459 (Colo. App. 2003) ("Under CRE 401, proffered evidence must relate to a fact 'that is of consequence to the determination of the action.' . . .  [T]he evidence must be legally material to some factual issue in the case.") (citation omitted).

¶ 44     Indeed, had the jury ruled in MarkWest's favor on these grounds, it would have been improper because this would have constituted a double recovery for MarkWest.  *See Lexton-Ancira Real Est. Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992) ("Generally, a plaintiff may not receive a double recovery for the same wrong."); *see also Quist v. Specialties Supply Co.*, 12 P.3d 863, 866 (Colo. App. 2000) (The double recovery prohibition "applies in cases involving multiple defendants as well as in cases involving multiple claims against a single defendant.").  Had MarkWest's

argument been successful, it could have allowed MarkWest to avoid Dyess's request for $4,081,182.83 in retainage in *Dyess II*, while at the same time recovering $4,500,000 in late completion payments through its judgment in *Dyess I*. Such an outcome would have allowed MarkWest to use the breach of contract claim to benefit twice.

¶ 45    Accordingly, admitting this evidence given its legal irrelevance — coupled with a high risk of prejudice — would have been error. Thus, the district court properly excluded it.

### B.    The Spoliation Instruction

#### 1.    Additional Background

¶ 46    Before trial, Dyess sought information and documents related to MarkWest's bidding process and efforts to hire another contractor for the Ridge Road restoration work. Dyess contended that MarkWest failed to preserve much of the documentation amid active litigation in *Dyess I* despite knowing this issue would be relevant for *Dyess II*. So Dyess requested a permissive adverse inference instruction to remedy the spoliation. MarkWest opposed the request, arguing it was untimely and Dyess had not shown that MarkWest spoliated evidence or that Dyess was prejudiced.

¶ 47    During trial, Dyess's counsel cross-examined Michael Hoy about the Ridge Road restoration work, discussing MarkWest's file management software system.  Dyess's counsel asked about MarkWest's efforts to solicit bids for the Ridge Road restoration work, and Hoy eventually confirmed that MarkWest had been unable to provide Dyess with "the bidding documents and communications with the bidders for . . . Ridge Road."

¶ 48    Dyess introduced an undated proposal that Hoy prepared after MarkWest began seeking bids for the restoration work that outlined the scope and requirements of the Ridge Road restoration work. But Hoy confirmed that he could not locate any other documentation concerning (1) what MarkWest sent to bidders; (2) when he sent the proposal; (3) information bidders sent to MarkWest; (4) the timeframe MarkWest provided for bids; and (5) internally referenced exhibits in the proposal — or anything else related to the bidding.  Hoy agreed that Dyess had requested these documents and that MarkWest had notice of the need to retain them, but MarkWest had not preserved them.  Hoy attributed their disappearance to transitioning to a new file management software system.  Dyess contended this documentation was important

because it could have shown that MarkWest had sent the proposal soliciting bids for the restoration work *before* it told Dyess it was hiring another contractor. Dyess contended this could have shown that MarkWest had planned to hire a cheaper contractor and use Dyess's reluctance to begin the restoration work without payment assurances as a pretext to bill Dyess for the contractor's work.

¶ 49 At a hearing (after the jury left), Dyess renewed its request for a permissive adverse inference instruction after Hoy's testimony, and the court granted the request. The court noted that the documentation, which was lost in the midst of active litigation, was "highly relevant" to the credibility of witnesses and MarkWest's argument that it was entitled to offset portions of the retainage — namely, its claim that it could offset the costs of the Ridge Road restoration work (approximating $700,000). The court added that an adverse inference instruction would serve remedial and punitive purposes given the importance of the documents and noted that MarkWest "did a really, really, really bad job of preserving the documents when there was a case going on."

¶ 50 MarkWest's counsel requested that the instruction specify that the jury could presume an adverse inference as to MarkWest's

offsetting counterclaim against Dyess but not Dyess's breach of contract claim against MarkWest. But the court noted that the current instruction already did this, detailing that the instruction then read, "You're instructed that you may infer, by reason of MarkWest's failure to preserve and produce its documents related to the bidding and contracting work for the work at issue and its counterclaim, that the evidence contained in such documents was unfavorable to MarkWest."

¶ 51 The next day MarkWest's counsel notified the court that MarkWest had decided "to withdraw the breach of contract counterclaim." But MarkWest's counsel clarified that "we are preserving our [declaratory judgment] offset counterclaim that [the court] will decide if necessary post-trial." MarkWest's counsel then moved to dismiss the counterclaim with prejudice, again noting that it was dismissing "the breach of [contract] counterclaim, not the offset counterclaim," which the court granted.

¶ 52 MarkWest agreed this would require altering the jury instructions. But, during the jury instruction conference, Dyess's counsel argued the instruction needed to cover more than just the counterclaim because the spoliation of the Ridge Road documents

directly related to MarkWest's defense that it did not have to pay the retainage because of Dyess's alleged failure to complete the Ridge Road restoration work. MarkWest represented that it was not seeking to offset any retainage with the Ridge Road restoration work costs; rather, "[w]e are arguing they are not entitled to retainage; in other words, they didn't substantially perform the project."

¶ 53    The instruction tendered to the jury, Instruction 12, was tailored specifically to the Ridge Road restoration work, and it read,

> It is the duty of a party not to take action that will cause the destruction or loss of relevant evidence, hindering the other side from making its own examination and investigation of all potentially relevant evidence. You are instructed that you may infer, by reason of MarkWest's failure to preserve and produce documents relating to the RFQ for the No. 2 Ridge Road slip repair and remediation work in July or August of 2019, that the evidence contained in such documents was unfavorable to MarkWest.

### 2.    Analysis

¶ 54    MarkWest argues that the district court erred by instructing the jury it could presume the evidence MarkWest spoliated was unfavorable to its case. MarkWest argues that the evidence it lost only related to its counterclaim, which it voluntarily dismissed, and

26

therefore the instruction was irrelevant to the issues before the jury. As a result, MarkWest asserts, the instruction "only served to paint MarkWest in a negative light," "was highly prejudicial," and warrants a new trial.

¶ 55 Dyess counters that MarkWest forfeited this issue "by submitting a conclusory opening brief" that fails to adequately cite record support for its contentions. If the issue is reviewable, Dyess argues that (1) it is undisputed that MarkWest spoliated evidence that the court found MarkWest should have known to preserve, and (2) the evidence was related to MarkWest's contention that Dyess was not entitled to retainage because Dyess failed to complete the Ridge Road restoration work. Dyess argues that while MarkWest used Dyess's alleged failure to restore the road to justify its refusal to pay retainage, the missing evidence could have shown that MarkWest never wanted Dyess to complete this work and had been trying to obtain other contractors to complete the work at a price lower than its contract with Dyess. Finally, Dyess argues that any alleged error was harmless.

### a. Standard of Review and Applicable Law

¶ 56 MarkWest's objections to the instruction preserved this issue for appeal. *See Gebert,* ¶ 25.

¶ 57 "The ability to provide the jury with an adverse inference instruction as a sanction for spoliation of evidence derives from the trial court's inherent powers. A trial court has broad discretion to permit the jury to draw an adverse inference from the loss or destruction of evidence." *Aloi v. Union Pac. R.R. Corp.,* 129 P.3d 999, 1002 (Colo. 2006) (citation omitted). We review a court's decision for an abuse of discretion, and "we will not overturn the trial court's imposition of an adverse inference unless the sanction is manifestly arbitrary, unreasonable, or unfair. In determining whether the trial court abused its discretion, we must examine whether the rationales underlying the adverse inference supported giving the instruction as a sanction for spoliation." *Id.* (citation omitted).

¶ 58 To this end, "adverse inference instructions serve both a punitive and a remedial purpose." *Id.* The punitive purpose "serves to deter parties from destroying evidence in order to prevent its introduction at trial," while the remedial purpose "serves to restore

28

the putative prejudiced party to the position it would have held" absent spoliation. *Id.*

¶ 59 As for the culpable party's state of mind, our supreme court held in *Aloi* that there was "no useful distinction between destroying evidence in bad faith and destroying evidence willfully." *Id.* at 1003. Therefore, it is not necessary for a district court to find that the culpable party acted in bad faith to merit an adverse inference — willfulness will suffice where it appears the evidence would have been relevant to an issue at trial. *Id.* at 1002-04 (when a defendant had notice of an impending lawsuit but failed to preserve documents relevant to the litigation, this was sufficient for a finding of willfulness justifying an adverse inference).

¶ 60 Further, the district court's "inherent power to impose a punitive sanction is not limited to intentional spoliation of evidence." *Pfantz v. Kmart Corp.*, 85 P.3d 564, 568-69 (Colo. App. 2003). Negligence may justify an adverse inference "to remediate harm when the inference is 'reasonably likely to have been contained in the destroyed evidence.'" *Id.* at 569 (quoting *Rodriguez v. Schutt,* 896 P.2d 881, 884 (Colo. App. 1994)).

## b. Application

¶ 61 The district court did not abuse its discretion by issuing a permissive adverse inference instruction. To start, MarkWest does not dispute that it spoliated evidence. And the negative inference Dyess sought to introduce — namely, that MarkWest may have already been soliciting bids for the Ridge Road restoration work before it construed Dyess's request for a commitment for payment as a "refusal" — could have been substantiated by the missing materials. *See Pfantz*, 85 P.3d at 569. Therefore, MarkWest's spoliation merited an adverse inference instruction to remedy its conduct that was, at the very least, negligent. *See Aloi*, 129 P.3d at 1002-04; *Pfantz*, 85 P.3d at 568-69.

¶ 62 Further, the punitive and remedial purposes of an adverse inference instruction were served here. The instruction served a punitive purpose by punishing MarkWest for failing to preserve relevant documents, preventing their introduction at trial. *See Aloi*, 129 P.3d at 1002. And the instruction served a remedial purpose because Dyess would have been prejudiced by the materials' loss without an instruction allowing the jury to infer that they could

30

have been adverse to MarkWest.  *See id.*  As a result, the district court did not abuse its discretion.

¶ 63    Furthermore, MarkWest's argument that the documents only related to its counterclaim lacks merit.  MarkWest defended Dyess's breach of contract claim in part on a theory that Dyess had failed to complete the Ridge Road restoration work.  Indeed, MarkWest's nonacceptance notice explicitly refused Dyess's request for retainage on this ground.  And MarkWest repeatedly emphasized this argument during trial.  Even after MarkWest withdrew its counterclaim, it still maintained that Dyess was not entitled to retainage because Dyess failed to complete the Ridge Road restoration work.  During closing arguments, for example, MarkWest's counsel argued that a Dyess witness

> told us that he simply chose . . . to intentionally not complete restoration of No. 2 Ridge Road, . . . even though doing so was certainly within the contract scope of work.  He acknowledged that.  And there is no question that Dyess failed to restore No. 2 Ridge Road right-of-way in any fashion, and therefore failed to complete this project.

MarkWest's counsel's continuation of this argument takes up nearly six pages of the transcript, and it was mentioned several more times even after this.

¶ 64 Collectively, because MarkWest failed to preserve documents directly relevant to Dyess's breach of contract claim, and because the permissive adverse inference instruction was appropriate and served proper punitive and remedial purposes, the district court did not abuse its discretion by giving the challenged instruction.

### III. Disposition

¶ 65 We affirm the judgment of the district court.

JUDGE HARRIS and JUDGE SCHUTZ concur.